**MOTOBECANE AMERICA, LTD., a New Jersey corporation, Plaintiff,**

v.

**PATRICK PETROLEUM COMPANY, a Delaware corporation, and Patrick Oil & Gas Corp., an Ohio corporation, Defendants.**

**Civ. A. No. 84CV–7062–AA.**

United States District Court,
E.D. Michigan, S.D.

Jan. 14, 1985.

Alan R. Dominick, Jackson, Mich., for plaintiff.

Lawrence R. Abramczyk, Donovan Hammond Ziegelman Roach & Sotiroff, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the court on cross-motions for summary judgment. For the rea-

sons stated herein, the motion of defendants is granted, and the motion of plaintiff is denied. The following is a summary of the facts (about which there appears to be no basic disagreement between the parties) as related primarily by plaintiff in its motion for summary judgment.

FACTS

On June 26, 1979, plaintiff Motobecane entered into an agreement with an individual named Peter Burns. Burns personally guaranteed the payment of certain obligations of Burns Three, Inc. to Motobecane, and granted Motobecane a security interest in his partnership participation (hereafter the "limited partnership interest") in the Patrick Oil and Gas 1972 Combination Partnership (hereafter the "1972 partnership") to secure the payment of his guaranty.

Defendant Patrick Oil & Gas (hereafter "Patrick Oil") was the general partner in the 1972 partnership. Defendant Patrick Petroleum is a wholly-owned subsidiary of Patrick Oil. By letter dated September 12, 1979, plaintiff notified Patrick Oil of its security interest in Burns' limited partnership interest in the 1972 partnership.[1] By letter dated September 28, 1979, an officer of Patrick Oil represented to Motobecane that Patrick Oil had noted Motobecane's security interest on its records.[2]

By letter dated August 27, 1981, Motobecane inquired of Patrick Oil of the status of its security interest. Patrick Oil responded by letter dated September 11, 1981, advising that Burns' limited partnership interest had been exchanged for stock of Patrick Petroleum, which stock was mailed to Burns on January 9, 1980. Defendants' counsel represented at the hearing on these motions that the 1972 partnership was dissolved on that date, and its assets, consisting of oil and gas reserves, were liquidated. Limited partners such as Burns received Patrick Petroleum stock in exchange for their equity interest in the 1972 partnership. The September 11 letter from Patrick Oil was Motobecane's first indication that its security interest had been compromised. When it determined that Burns and Burns Three, Inc. were uncollectible, it initiated this action against the instant defendants.

DISCUSSION

Motobecane alleges that defendants, having represented that they had noted the existence of the former's security interest on their records, are now estopped from denying the existence of that security interest. It further alleges that defendants failed to advise it of the exchange of the limited partnership interest for the Patrick Petroleum stock, in violation of M.C.L.A. § 440.8403, the pertinent portions of which provide as follows:

Sec. 8403. (1) An issuer to whom a security is presented for registration is under a duty to inquire into adverse claims if

---

1. That letter stated in full as follows:

September 12, 1979

Patrick Oil and Gas Corp.
744 West Michigan Avenue
Jackson, Mich. 49201
Re: 1972 Oil & Gas Combination, Ltd.
    Partnership no. 2
Gentlemen:
    Please be advised that Mr. Peter Burns Sr. has granted to our client, Motobecane America, Ltd., a security interest in his partnership participation.
    We understand that this partnership participation is already subject to a prior lien in favor of the New Canaan Bank & Trust Company.
    We would appreciate your advising us what you require, if anything to recognize our client's security interest. We are enclosing herewith a copy of Mr. Burns' security grant.
            Very truly yours,
            Richard Kent Bernstein

2. That letter stated in full as follows:

September 28, 1979

Richard Kent Bernstein, Esq.
Bernstein & MacCarthy
485 Madison Avenue
New York, New York 10022
    Re: 1972 Oil & Gas Program, Limited Partnership No. 2
Dear Mr. Bernstein:
We have noted on our records Mr. Peter Burns Sr. security grant to Motobecane America, Ltd. You have provided adequate documentation for the change.
Please contact us if we can be of further assistance.
            Sincerely,
            Patrick Oil and Gas Corp.
            (Ms.) Aleta Pippin
            Investor Relations

(a) a written notification of an adverse claim is received at a time and in a manner which affords the issuer a reasonable opportunity to act on it prior to the issuance of a new, reissued or reregistered security and the notification identifies the claimant, the registered owner and the issue of which the security is a part and provides an address for communications directed to the claimant; or

(b) the issuer is charged with notice of an adverse claim from a controlling instrument which it has elected to require under subsection (4) of section 8402.

(2) The issuer may discharge any duty of inquiry by any reasonable means, including notifying an adverse claimant by registered mail, or certified mail, if the receipt of mailing is postmarked, at the address furnished by him or if there be no such address at his residence or regular place of business that the security has been presented for registration of transfer by a named person, and that the transfer will be registered unless within 30 days from the date of mailing the notification, either

(a) an appropriate restraining order, injunction or other process issues from a court of competent jurisdiction; or

(b) an indemnity bond sufficient in the issuer's judgment to protect the issuer and any transfer agent, registrar or other agent of the issuer involved, from any loss which it or they may suffer by complying with the adverse claim is filed with the issuer.

Consequently, Motobecane contends that it is entitled to recover from the defendants the monetary value of the Patrick Petroleum stock up to the amount necessary to satisfy the obligation running from Burns to Motobecane.

### Estoppel

Motobecane argues that defendants should be estopped from denying that they had notice of Motobecane's security interest in Burn's limited partnership interest in the 1972 partnership. This argument is predicated upon Motobecane's reliance on the September 28 letter from Patrick Oil, in which the latter acknowledged receipt of Motobecane's notice of the security interest.

The elements of promissory estoppel are set forth in *McMath v. Ford Motor Co.*, 77 Mich.App. 721, 725, 259 N.W.2d 140 as follows:

(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, (4) in circumstances such that the promise must be enforced if injustice is to be avoided.

█ In this case, it is difficult to discern the nature of the promise on which Motobecane relied. Motobecane argues that Patrick Oil's acknowledgement of the notice of Motobecane's security interest in Burns' limited partnership interest constituted an implied promise that Patrick Oil would not subsequently deny having received notice of the existence of the security interest. If that was the sum total of Motobecane's position, it might satisfy the conditions for obtaining an estoppel to this extent. However, Motobecane further argues that the acknowledgement now prevents defendants from denying that they had an obligation to protect Motobecane's security interest. No such promise appears in the September 28 letter, nor can the court infer one from the plain meaning of the language of the letter. An estoppel can not rest upon an alleged promise which the court can not discern from the statements made by the defendant, *cf. Association of Hebrew Teachers of Metropolitan Detroit v. Jewish Welfare Federation of Detroit*, 62 Mich.App. 54, 233 N.W.2d 184 (1975) (holding that estoppel will not lie upon a promise that is too indefinite to permit the court to determine the scope of the alleged obligation).

█ The court therefore holds that defendant's transmission of the September 28 letter prevents them from denying notice of Motobecane's security interest in the 1972 partnership. Any obligation that Motobecane seeks to impose upon defendants to notify it of events that might compromise that security interest must arise from

a separate contractual, statutory, or common law source. Motobecane relies upon the statute cited above, M.C.L.A. § 440.-8403 as the source of this obligation.

### Application of M.C.L.A. § 440.8403

██ Defendants raise two principal arguments [3] against Motobecane's contention that § 440.8403 imposed upon them a duty to notify Motobecane of the exchange of Burns' limited partnership interest for Patrick Petroleum stock. First, they argue that the limited partnership interest was not a "security" for purposes of Article Eight of the Uniform Commercial Code, of which § 440.8403 is a part. In connection with this position, defendants further argue that Motobecane had no security interest in the Patrick Petroleum stock, which is conceded by the defendants to be a "security" for purposes of Article Eight, at the time that it was presented to Patrick Petroleum for registration. Second, defendants argue that Motobecane did not give notice of an "adverse claim" in the limited partnership interest, as that term is used in § 440.8403.

██ With respect to the first argument, the definition of a "security" under Article Eight is provided by M.C.L.A. § 440.8102(1(a)), which reads as follows:

Sec. 8102. (1) In this article unless the context otherwise requires

(a) A "security" is an instrument which

---

3. Defendants have raised three additional arguments in support of their position that Motobecane's claim under § 440.8403 is groundless. First, they argue that Motobecane could have properly protected itself by taking steps to become a creditor of the 1972 partnership, and asserting its rights under the Uniform Limited Partnership Act, M.C.L.A. § 449.223. The short answer to this contention is that any rights that Motobecane might have obtained under the Uniform Limited Partnership Act would be supplemental to, and not exclusive of rights that it might obtain under Article Eight of the Uniform Commercial Code.

Second, defendants argue that, because Motobecane sent its correspondence to defendant Patrick Oil & Gas only, Patrick Petroleum was not notified of Motobecane's security interest, and could not incur any obligations under § 440.8403.

The court concludes that Patrick Petroleum may very well have received "notice in fact" of Motobecane's security interest, which would have been sufficient to trigger operation of the obligations of § 440.8403 if the other prerequisites of that statute had been met. M.C.L.A. § 440.1201(26) prescribes the kinds of conduct that gives rise to "notice" under the U.C.C. as follows:

(26) A person "notifies" or "gives" notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person "receives" a notice or notification when

(a) it comes to his attention; or

(b) it is duly delivered at the place of business through which the contact was made or at any other place held out by him as the place for receipt of such communications. (emphasis added)

Defendants contend that notice to Patrick Oil can not be construed to amount to notice to its wholly-owned subsidiary, Patrick Petroleum, because to do so would amount to disregarding the separate legal existence of the subsidiary corporation. In response, Motobecane adverts to a letter dated April 26, 1982 from the corporate counsel of Patrick Petroleum to counsel for Motobecane. The writer indicates in that letter that Patrick Petroleum did in fact note Motobecane's security interest on "our records". Motobecane argues that the letter is evidence that Patrick Petroleum received "notice in fact" of Motobecane's security interest, and that this is all that is required by § 440.1201(26). The court agrees that the April 26 letter is sufficient to raise a question of material fact about whether or not notice of security interest "came to the attention" of Patrick Petroleum. Consequently, Patrick Petroleum's argument that it is entitled to summary judgment on the grounds of inadequate notice must fail.

Third, defendants contend that this claim is barred by laches. They argue that, had Motobecane given them notice of Burns' default prior to dissolution of the 1972 partnership, they might have been able to withhold distribution of the Patrick Petroleum stock to Burns and thereby protect Motobecane's security interest (although they vigorously argue that they were under no legal obligation to do so). Although this fact is not clear from the present record, it appears that Burns did not default on his obligation to Motobecane until some time after the dissolution of the 1972 partnership. Thus, even had Motobecane promptly notified defendants of Burns' default, it is not clear that defendants could still have taken steps at that time to prevent distribution of the stock to Burns. Defendants have not established sufficient facts in their own motion for summary judgment that would entitle them to a dismissal of the action under a theory of laches. Further, defendants have not argued that this action is barred by the applicable statute of limitations.

(i) is issued in bearer or registered form; and

(ii) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

(iii) is either one of a class or series or by its terms is divisible into a class or series of instruments; and

(iv) evidences a share, participation, or other interest in property or in an enterprise or evidences an obligation of the issuer.

The court agrees with defendants that Burns' limited partnership interest in the 1972 partnership was not a "security" as that term is defined in Article Eight.[4] Rather the interest is merely a contract right, a creature of the limited partnership agreement to which Burns and Patrick Petroleum were parties. One of the key differences of this distinction concerns transfer of the two kinds of property interests. While the rules for transfer of securities is governed by Article 8, transfer of a limited partnership interest is often governed, as it is in this case, by the partnership agreement itself. Article XV of the agreement that created the 1972 partnership specifically provided that a limited partner such as Burns could not transfer or assign his interest without gaining the approval of the general partner. Securities, on the other hand, can usually be transferred by endorsement of the owner or holder, without the consent of the issuer of the security. Motobecane's counsel conceded at oral argument that the limited partnership interest does not constitute a "security" for purposes of § 440.8403. Nonetheless, it argues that its security interest attached to the Patrick Petroleum stock immediately upon the exchange of the limited partnership interest for the stock, by virtue of M.C.L.A. § 440.9306, which provides in pertinent part as follows:

Sec. 9306. (1) "proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral, or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are "cash proceeds." All other proceeds are "noncash proceeds".

(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

Defendants concede that Motobecane's security interest attached to the Patrick Petroleum stock upon the exchange of the limited partnership interest for the stock. They argue, nonetheless, that at the time that the stock was tendered by the 1972 partnership to Patrick Petroleum for registration, that stock was owned by the partnership, and not by Burns as a limited partner of that entity. Thus, Motobecane's security interest in the stock, as proceeds of the limited partnership interest, did not attach until *after* the stock had been registered. Because the notification obligation imposed upon the issuer by § 440.8403 applies only to stock for which the issuer has received notice of an adverse claim at the time that it is tendered for registration, the obligation did not arise with respect to the Petroleum stock, according to defendants.

■ The court concludes that this hypertechnical construction of the statute is at odds with its purposes. The record indicates that Patrick Oil had notice of Motobecane's security interest in Burns' limited partnership interest. Patrick Oil also knew

---

**4.** The definition of "securities" provided by Article 8 is notably more narrow than those provided by the federal securities laws. For example, section 3 of the 1934 Securities and Exchange Act, 15 U.S.C. § 78c(10) defines a security, in part, as "any note, stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement." This language has been construed to include within its ambit limited partnership interests, *see, e.g. Mason v. Unkeless,* 618 F.2d 597 (9th Cir.1980).

of course that Burns had received the Patrick Petroleum stock in exchange for that limited partnership interest. Patrick Oil is further charged with constructive knowledge that Motobecane's security interest attached to the Patrick Petroleum stock at the moment of the exchange, by operation of § 440.9306.

Defendants' position, in essence, is that the timing of the relevant events, particularly the registration of the stock, and the transfer of the stock from 1972 partnership to its limited partners, is dispositive of the issue of whether or not the defendants had notice of Motobecane's security interest in the stock. Such a conclusion violates the well-worn but hardy prohibition against exulting form over substance. In particular, the timing of the relevant events, which was orchestrated entirely by the defendants, who were engaged in a reorganization of the various entities that they controlled, should not defeat Motobecane's right to be notified of events that might compromise its security interest, if such a right were found to exist. Regardless of who was the owner of the stock at the moment that it was tendered to Patrick Petroleum for registration, Patrick Oil had notice that Motobecane had a presently existing security interest that would attach immediately to the stock upon transfer to Burns. The court concludes that this confluence of events was sufficient to apprise defendants of Motobecane's interest in the stock.

### Absence of an "Adverse Claim"

The court further concludes, however, that defendants were not obligated to notify Motobecane of the exchange because Motobecane had not provided them with notice of an "adverse claim" as that term is used in § 440.8403. Section 440.8301 describes an adverse claim as "a claim that a transfer was or would be wrongful or that a particular adverse person is the owner of a or has an interest in the security." Comment 4 to that provision elaborates as follows:

> 4. An adverse claim may be either legal or equitable, e.g., that the claimant is the beneficial owner of a security, though not the legal owner of it, or that it has been or is proposed to be transferred in breach of trust or a valid restriction on transfer.

Motobecane can not demonstrate that the exchange of the limited partnership interest for the Patrick Petroleum stock constituted a breach of trust or violated a valid restriction on transfer. Not only did the security agreement between Motobecane and Burns fail to prohibit the alienation of the collateral,[5] but the very nature of the security agreement was such that Motobecane's and Burns' interests in the collateral were not adverse at the time of the transfer.

Because the June 26 letter from Burns to Motobecane (see note 5, *supra*), which appears from the present record to constitute the sum total of the security agreement between the parties, is silent on the scope of Motobecane's rights as secured creditor, the court will assume, for the sake of this motion, that Motobecane would be entitled to ownership of the assets embraced by the limited partnership interest upon Burns' default on his obligations to Motobecane. Such is the operation of the traditional security agreement.[6] Motobecane does not allege that Burns had defaulted at the time of the exchange of the limited partnership interest in the Patrick Petroleum stock, however. Consequently, it does not argue

---

**5.** The court has not been supplied with a copy of a UCC–1 or equivalent standard form document memorializing the security agreement by the parties. It therefore presumes for the purpose of this motion that the terms of the security agreement is set forth in a brief letter from Burns to Motobecane, dated June 26, 1979. The portion of the letter that addressed the security interest provided simply as follows:

> I hereby also grant you a security interest in my partnership participation in Patrick Petro-

leum 1972–2 Oil and Gas, presently held by the New Canaan Bank and Trust Company and subject to that bank's prior lien, and I agree to execute such documents as may be necessary to protect your lien.

**6.** Part 5 of Article 9 of the Uniform Commercial Code governs the secured creditor's rights upon the occurrence of default. *See generally* White & Summers, *Handbook of the Law under the Uniform Commercial Code,* 2d Ed., (1980).

that it had rights of ownership or control of the limited partnership interest at that time. From this silence in the pleadings and in the papers submitted in support of its motion, the court presumes that Motobecane concedes the right of Burns to take title in the Patrick Petroleum stock in his own name at the time of the transfer. By exchanging the limited partnership interest for the stock, defendants were merely changing the form of Burns' investment. Indeed, defendants do not deny that they "cashed out" Burns' partnership interest with full knowledge that Motobecane had a viable security agreement in that partnership interest.

Motobecane does not seek to exercise its rights under the security agreement against these defendants in this action, however. This case does not present a priority dispute between a secured creditor and the transferee of the secured collateral from the debtor. Rather, Motobecane alleges that defendants failed to meet their statutory obligation, as issuers of the Patrick Petroleum stock, to inform an "adverse claimant" of a proposed transfer and registration of the stock. Motobecane has simply failed to demonstrate to the satisfaction of this court that it was "adverse claimant" to Burns with respect to the stock at the time of the transfer. Section 440.8403 typically applies to situations where a stock certificate has been lost or stolen, or has been fraudulently or improperly transferred by endorsement, see Official Comment 1. In such a case, the person claiming to have been improperly divested of possession and the person in possession of the certificate will have adverse claims to the stock, i.e. both will assert rights of ownership. The rights of such rival claimants are mutually exclusive, and the statute at issue provides the issuer with guidance in resolving such competing claims. In the instant case, however, Motobecane does not contend that its security interest in the partnership interest, or in the Patrick Petroleum stock, could not co-exist with Burns' simultaneously existing rights to ownership of the stock and possession of the certificates. Indeed, this co-existence of the rights of the secured creditor and

the debtor in the secured collateral is a central feature of a security interest agreement. Motobecane and Burns were not vying for possession of the certificates or title to the stock at the time of the registration of the stock in Burns' name. Each had exactly what they were entitled to when defendants exchanged the limited partnership interest for the stock: Burns, title and possession of the stock, and Motobecane a continuing security interest.

Although Motobecane's security interest in the collateral was compromised to the extent that the Patrick Petroleum stock was more freely negotiable than was the limited partnership interest from which it arose, and Burns was able to more easily put the collateral beyond the reach of his secured creditor, this potential diminution in the strength of Motobecane's security interest is not the kind of conflict that creates an adverse claim between Burns and Motobecane, in the opinion of this court. That being the case, one of the essential elements for the imposition upon defendants of the duty to notify Motobecane was not fulfilled. The court concludes therefore, as a matter of law, that Motobecane was not entitled under § 440.-8403 to receive notification from the defendants that they would exchange Burns' limited partnership interest for Patrick Petroleum stock prior to consummating the transfer.

The court further concludes that, there being no persisting genuine questions of material fact in this case, defendants' motion for summary judgment is granted, and the complaint is dismissed with prejudice. Plaintiff's motion is denied.

SO ORDERED.