**MOTOBECANE AMERICA, LTD., a New Jersey corporation, Plaintiff-Appellant,**

v.

**PATRICK PETROLEUM COMPANY, a Delaware corporation, and Patrick Oil & Gas Corp., an Ohio corporation, Defendants-Appellees.**

No. 85–1152.

United States Court of Appeals, Sixth Circuit.

Argued April 8, 1986.

Decided May 30, 1986.

---

**31.** *Borrell v. United States International Communications Agency,* 682 F.2d 981, 989 (D.C.Cir. 1982).

**32.** *See* 28 U.S.C. § 2412(d)(1)(A).

Alan R. Dominick, argued, Dykema, Gossett, Spencer, Goodnow & Trigg, Jackson, Mich., for plaintiff-appellant.

Lawrence R. Abramczyk argued, Donovan, Hammond, Ziegelman, Roach & Sotiroff, P.C., Detroit, Mich., for defendants-appellees.

Before KEITH and MARTIN, Circuit Judges; and WEICK, Senior Circuit Judge.

WEICK, Senior Circuit Judge.

Plaintiff-Appellant Motobecane America, Ltd., ("Motobecane") a New Jersey corpo-ration, appeals from the Judgment of the United States District Court for the Eastern District of Michigan, Southern Division, Joiner, J., granting the Defendants'-Appellees' Cross-Motion for Summary Judgment, denying Motobecane's Cross-Motion for Summary Judgment, and dismissing Plaintiff's Complaint with prejudice in this diversity action to recover damages for loss of a security interest. Judge Joiner's Opinion in this case is reported at 600 F.Supp. 1419 (E.D.Mich.1985). This case is governed by Michigan law.

## I.

As noted, the district court decided this case on Cross-Motions for Summary Judgment. The relevant facts are therefore not disputed, and only questions of law are to be determined. The facts are as follows.

In June of 1979 one Peter Burns ("Burns") was the principal of a Florida rental agency known as Peter Burns Three, Inc. ("Burns Three"). Burns Three was a customer of Motobecane.

By letter dated June 26, 1979 Burns personally guaranteed payment of certain obligations of Burns Three to Motobecane in return for Motobecane's extending the timing on a schedule of payments from Burns Three to Motobecane.

In the same letter, to secure payment of his guaranty, Burns granted Motobecane a security interest in his partnership participation ("limited partnership interest") in the Patrick Petroleum 1972–2 Oil and Gas Combination Partnership (the "1972 partnership").[1]

---

1. The letter from Burns to Motobecane guaranteeing payment of the Burns Three obligations and granting Motobecane a security interest in his limited partnership interest stated in full as follows:

June 26, 1979

Motobecane America, Ltd.
86 Orchard Street
Hackensack, N.J. 07601
Gentlemen:
In consideration of your extending the timing on the schedule of payments (under the agreement dated as of March 29, 1979 between Burns Three, Inc. and Motobecane America, Ltd.), in accordance with the attached proposed schedule, and in further consideration of the benefit to accrue to me as a shareholder of Burns Three, Inc., I hereby, for myself, successors and assigns, guarantee individually and severally the payment obligations of Burns Three, Inc. under the above-mentioned agreement.
This guarantee cannot be changed or modified except in writing signed by you.
I hereby also grant you a security interest in my partnership participation in Patrick Petroleum 1972–2 Oil and Gas, presently held by the New Canaan Bank and Trust Company

Appellee Patrick Oil & Gas Corp. ("Patrick Oil") was the general partner in the 1972 partnership. Appellee Patrick Petroleum Company ("Patrick Petroleum") was at all times relevant to this action a wholly-owned subsidiary of Patrick Oil.

By letter dated September 12, 1979, Motobecane notified Patrick Oil of its security interest in Burns' limited partnership interest in the 1972 partnership.[2] By letter dated September 28, 1979, an agent of Patrick Oil indicated to Motobecane that Patrick Oil had noted Motobecane's security interest on its records.[3]

By letter dated August 27, 1981 Motobecane inquired of Patrick Oil what the value of Burns' limited partnership interest was, whether it was otherwise free and clear, and whether it was saleable. By letter dated September 11, 1981 Patrick Oil responded, advising Motobecane that Burns' limited partnership interest was exchanged for Patrick Petroleum Company stock on January 9, 1980. This was the first time Motobecane became aware that its security interest had been compromised. After then learning that Burns and Burns Three were uncollectible Motobecane initiated the present action in the district court against Patrick Oil and Patrick Petroleum seeking damages of $192,962.

At the hearing on the Cross-Motions for Summary Judgment appellees' counsel represented that the 1972 partnership was dissolved on January 9, 1980, and its assets, consisting of oil and gas reserves, were liquidated. Limited partners, such as Burns, received Patrick Petroleum stock in exchange for their equity interest in the 1972 partnership.

## II.

Appellant presents three issues for our consideration:

1. Whether the district court erred in holding the defendants were not obligated to protect Motobecane's security interest under a theory of promissory estoppel.

2. Whether the district court erred in believing that plaintiff relied upon Mich. Comp.Laws § 440.8403 as the sole source of an obligation imposed upon defendants to notify Motobecane of events compromising Motobecane's security interest.

---

and subject to that bank's prior lien, and I agree to execute such documents as may be necessary to protect your lien.

> Very truly yours,
> Peter Burns Sr.

Notarized:
Sworn before me this 26th day of June, 1979

LINDA S. ASHER
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires June 30, 1980

2. The letter stated in full as follows:

> September 12, 1979
> Patrick Oil and Gas Corp.
> 744 West Michigan Avenue
> Jackson, Mich. 49201
> Re: 1972 Oil & Gas Combination, Ltd. Partnership no. 2
> Gentlemen:
> Please be advised that Mr. Peter Burns Sr. has granted to our client, Motobecane America, Ltd., a security interest in his partnership participation.
> We understand that this partnership participation is already subject to a prior lien in favor of the New Canaan Bank & Trust Company.
> We would appreciate your advising us what you require, if anything to recognize our client's security interest. We are enclosing herewith a copy of Mr. Burns' security grant.
> Very truly yours,
> Richard Kent Bernstein

3. That letter stated in full as follows:

> September 28, 1979
> Richard Kent Bernstein, Esq.
> Bernstein & MacCarthy
> 485 Madison Avenue
> New York, New York 10022
> Re: 1972 Oil & Gas Program, Limited Partnership No. 2
> Dear Mr. Bernstein:
> We have noted on our records Mr. Peter Burns Sr. security grant to Motobecane America, Ltd. You have provided adequate documentation for the change.
> Please contact us if we can be of further assistance.
> Sincerely,
> PATRICK OIL AND GAS CORP.
> (Ms.) Aleta Pippin
> Investor Relations

3. Whether the district court erred in finding that Motobecane did not have an "adverse claim" against the collateral as that term is used in Mich.Comp.Laws § 440.8403.

## A.

■ Appellant's argument with respect to the first issue is based on a theory of promissory estoppel. Appellant argues that by appellees' acts and representations to Motobecane that Motobecane's security interest was recognized and noted on appellees' records, appellees led Motobecane to rely on such representations and the implication that appellees would honor its security interest. Therefore, appellant argues, appellees are estopped to deny the existence of an agreement with Motobecane that Motobecane's security interest was and would continue to be recognized by appellees.

Appellants misapprehend the law of Michigan on promissory estoppel as set forth by Judge Joiner in his Memorandum Opinion and as argued by the appellees. It cannot be disputed that Judge Joiner, because of his long experience as a trial judge in the state of Michigan, is familiar with the law of the state of Michigan.

The elements of promissory estoppel are set forth in *McMath v. Ford Motor Co.,* 77 Mich.App. 721, 725, 259 N.W.2d 140, 142 (Mich.Ct.App.1977) as follows:

(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, (4) in circumstances such that the promise must be enforced if injustice is to be avoided.

*Id.,* at 725, 259 N.W.2d at 142 (citations omitted).

The *McMath* court also held:

Similarly, the allegations here, even when taken as true, lack the required specificity as to what defendant said or did that led plaintiff to rely to his detri-

ment. Plaintiff's allegations do not support a promise definite enough to justify his reliance. Because of this lack of specificity, the doctrine of estoppel cannot be invoked.

*Id.,* at 726, 259 N.W.2d at 143.

In *Association of Hebrew Teachers v. Jewish Welfare Federation,* 62 Mich.App. 54, 233 N.W.2d 184 (Mich.Ct.App.1975) the court held:

Application of the doctrine of promissory estoppel to prevent a defendant from avoiding the consequences of an oral agreement is inappropriate in ·a case where the pleadings, affidavits, arguments, and briefs disclose no legally enforceable obligation of the defendant and it is unclear what the defendant promised the plaintiff; any award by the court in these circumstances would be entirely speculative.

*Id.,* at 55, 233 N.W.2d 184.

In the case *sub judice* appellant attempts to rely on the letter of September 28, 1979 from Patrick Oil to Motobecane to establish a promise by appellees and resultant obligation to protect Motobecane's security interest.[4] We believe, as the district court held, pursuant to *McMath* and *Association of Hebrew Teachers,* that this letter contains no definite promise creating an obligation on the part of appellees to protect Motobecane's security interest. At the very most the September 28, 1979 letter prevents appellees from denying notice or knowledge of appellant's security interest in Burns' limited partnership interest; however, that is not equivalent to creating any affirmative obligation.

Accordingly, we agree with the district court that any obligation Motobecane seeks to impose upon appellees to notify it of events that might compromise appellant's security interest would have to arise from a separate contractual, statutory, or common law source. This brings us to consideration of the next two issues.

**4.** *See* n. 3, *supra.*

## B

■ With respect to this second issue appellant argues the district court erroneously failed to consider its contention that appellee Patrick Oil became a bailee of the collateral and proceeds by recognizing and noting Motobecane's security interest. While it is true that the district court did not treat the bailment issue in its Memorandum Opinion we believe this assignment of error is not well-taken for the following reasons.

The law of Michigan with respect to bailments is as follows:

A bailment requires the delivery of personal property in trust. *In re George L. Nadell & Company, Inc.,* 294 Mich. 150, 154; 292 NW 684 (1940). In order to constitute a sufficient delivery of the subject of the bailment, there must be a full transfer to the bailee so as to exclude the possession of the owner and to give the bailee the sole custody and control thereof. 8 Am Jur 2d, Bailments § 56, p. 961. As a general rule, the creation of the bailment requires the possession and control over the subject matter to pass from the bailor to the bailee.

*Orton v. Markward & Karafilis, Inc.,* 83 Mich.App. 548, 551; 269 NW2d 219 (1978).

Appellant presents no evidence indicating that a bailment was ever created. While it is true, as appellant asserts, that the bailment relationship need not be acceptable to the bailee, the cases which appellant cites indicating that an agreement between bailor and bailee is not necessary are simply not the law of Michigan and are not controlling.

Also, the argument appellant makes has been rejected by the Ninth Circuit on at least three occasions. *See Heinicke Instruments Co. v. Republic Corp.,* 543 F.2d 700 (9th Cir.1976); *Matter of Staff Mortgage & Investment Corp.,* 550 F.2d 1228 (9th Cir.1977); *In re Staff Mortgage & Investment Corporation,* 655 F.2d 967 (9th Cir.1981).

*Heinicke* was an interpleader action between an attaching creditor and the assignee-pledgee of 28,985 shares of stock. The court held that possession as a means of perfection was foreclosed because the requisite transfer of the stock never took place. The court noted that it was "highly dubious" that the issuer of stock could act as the agent for anyone other than the person to whom the stock was issued and that there was no evidence that the assignee ever empowered the issuing corporation to act as its agent or bailee.

In the first *Staff Mortgage & Investment* case the court stated: "[T]he drafters of the Uniform Commercial Code did not intend that a debtor acting as collecting agent for the creditor be the type of agent who could take possession of instruments for the purposes of perfection." *Matter of Staff Mortgage & Investment Corp.,* 550 F.2d 1228, at 1230. *See also In re Staff Mortgage & Investment Corp., supra.*

In the case *sub judice,* in addition to the fact that Motobecane was never in possession of the collateral or proceeds and could not therefore have delivered the collateral or proceeds to Patrick Oil as required to create a bailment, Patrick Oil, as the general partner in the 1972 partnership, owed a fiduciary duty to the other partners, including Burns. Patrick Oil could not therefore have been Motobecane's agent, bailee, or trustee. Nor could Burns, once he came into possession of the stock, have been Motobecane's agent, bailee, or trustee.

We believe no bailment ever existed imposing upon appellees the duty to notify appellant of events which might compromise appellant's security interest.

## C.

■ Appellant's third and final assignment of error is that the district court erred in holding that appellant did not have an "adverse claim" against the collateral as that term is used in Mich.Comp.Laws § 440.8403.

Michigan Compiled Laws § 440.8403 provides:

(1) An issuer to whom a security is presented for registration is under a duty to inquire into adverse claims if

(a) a written notification of an adverse claim is received at a time and in a manner which affords the issuer a reasonable opportunity to act on it prior to the issuance of a new, reissued or re-registered security and the notification identifies the claimant, the registered owner and the issue of which the security is a part and provides an address for communications directed to the claimant; or

(b) the issuer is charged with notice of an adverse claim from a controlling instrument which it has elected to require under subsection (4) of section 8402.

(2) The issuer may discharge any duty of inquiry by any reasonable means, including notifying an adverse claimant by registered mail, or certified mail, if the receipt of mailing is postmarked, at the address furnished by him or if there be no such address at his residence or regular place of business that the security has been presented for registration of transfer by a named person, and that the transfer will be registered unless within 30 days from the date of mailing the notification, either

(a) an appropriate restraining order, injunction or other process issues from a court of competent jurisdiction; or

(b) an indemnity bond sufficient in the issuer's judgment to protect the issuer and any transfer agent, registrar or other agent of the issuer involved, from any loss which it or they may suffer by complying with the adverse claim is filed with the issuer.

(3) Unless an issuer is charged with notice of an adverse claim from a controlling instrument which it has elected to require under subsection (4) of section 8402 or receives notification of an adverse claim under subsection (1) of this section, where a security presented for registration is indorsed by the appropriate person or persons the issuer is under no duty to inquire into adverse claims. In particular

(a) an issuer registering a security in the name of a person who is a fiduciary or who is described as a fiduciary is not bound to inquire into the existence, extent, or correct description of the fiduciary relationship and thereafter the issuer may assume without inquiry that the newly registered owner continues to be the fiduciary until the issuer receives written notice that the fiduciary is no longer acting as such with respect to the particular security;

(b) an issuer registering transfer on an indorsement by a fiduciary is not bound to inquire whether the transfer is made in compliance with a controlling instrument or with the law of the state having jurisdiction of the fiduciary relationship, including any law requiring the fiduciary to obtain court approval of the transfer; and

(c) the issuer is not charged with notice of the contents of any court record or file or other recorded or unrecorded document even though the document is in its possession and even though the transfer is made on the indorsement of a fiduciary to the fiduciary himself or to his nominee.

Official Comment 1 to that section provides in part:

1. Paragraph (a) of subsection (1) is the ordinary "stop transfer" notice commonly resorted to by the owner of a lost or stolen security or in a situation where breach of trust, disregard of a valid restriction or transfer, or other improper action is feared to have been occurred or to be about to occur.

"Adverse claim" is defined in Mich. Comp. Laws § 440.8301(1) as follows: " 'Adverse claim' includes a claim that a transfer was or would be wrongful or that a particular adverse person is the owner of or has interest in the security."

Official Comment 4 to § 440.8301 provides:

4. An adverse claim may be either legal or equitable, e.g., that the claimant is the beneficial owner of a security, though not the legal owner of it, or that it has been or is proposed to be transferred in breach of trust or a valid restriction or

transfer. (See Section 440.8204 Comment).

Michigan Compiled Laws § 440.8204 provides: "Unless noted conspicuously on the security a restriction on transfer imposed by the issuer even though otherwise lawful is ineffective except against a person with knowledge of it."

To begin, it is clear that § 440.8403 applies only to a limited set of circumstances, none of which are here present. This is not a situation where an issuer is presented with a security for registration. In the case *sub judice* the certificates at issue were not lost or stolen. Although plaintiff-appellant now wishes it had placed restrictions on the transfer of Burns' partnership interest or made such a transfer a default under the security agreement, there was no such restriction or condition. Even if there were § 440.8204 deals only with restrictions imposed by issuers, and, by implication, § 440.8301, insofar as it deals with restrictions on transfers, also applies only to restrictions imposed by issuers. (*See* Official Comment 4 to § 440.8204.).

Concerning the definition of "adverse claim" and the Official Comment expounding on the definition, we note again there was no valid restriction on transfer of the collateral. Also, Motobecane was never the legal or equitable owner of the limited partnership interest or the stock. It was merely an unperfected secured party. At the time of the exchange for stock Burns was not in default of the security agreement. Finally, as established in Part III, B, Patrick Oil never held the collateral or proceeds in trust for Motobecane; therefore, the issuance of stock to Burns could not have been a breach of trust.

The cases which appellant relies on in its discussion of this issue may be easily distinguished. *E.F. Hutton & Co. v. Manufacturers National Bank of Detroit*, 259 F.Supp. 513 (E.D.Mich.S.D.1966) was an action by a stockbroker which had mistakenly forwarded customers' stock warrants to the issuer's liquidating agent for payment of the first installment of liquidation dividends to compel the issuer and its agents to return the warrants. The court merely granted a preliminary injunction forbidding the liquidating agent from releasing the warrants from its custody or cancelling them.

In so holding the court also decided that

a discharging obligor who acts in good faith need not look for reasons why he should not pay off an instrument or register it, but if a claim on the instrument is brought to his attention at a time when he can prevent an injustice from occurring by paying the wrong party or registering a security in the name of a person not entitled to registration, he must do so.

*Id.*, at 521.

In the case *sub judice* no injustice occurred "by paying the wrong party or registering a security in the name of a person not entitled to registration." *Id.* Burns was the person entitled to registration with respect to the exchanged for securities.

*Dean Witter & Co., Inc. v. Educational Computer Corp.*, 369 F.Supp. 757 (E.D.Pa. 1974) was an action by a broker against the issuer of corporate stock to obtain transfer of certain legended stock certificates and damages for the issuer's delay or refusal to transfer the shares.

The issuer's successor moved for summary judgment on the ground that it refused to transfer "because the broker's customer had previously obtained the transfer of the same stock by providing the issuer with an affidavit stating that these shares had been lost." *Id.*, at 758.

The court granted the motion and held, relevant to the case *sub judice*, "that the transfer of stock, which was previously transferred pursuant to an affidavit of loss, would not be rightful." *Id.*, at 762.

The circumstances of *Dean Witter*, wherein the defendant issuer had previously transferred the stock which plaintiff sought to have transferred, are clearly distinguishable from this case wherein the only basis for appellant's challenge to the issuance to Burns was its unperfected se-

curity interest in Burns' partnership interest.

Section 440.8403 was not intended to, and does not, control cases such as the one *sub judice.* Accordingly, appellant did not have an "adverse claim" as that term is used in § 440.8403. The court properly dismissed this argument.

### III.

In conclusion, we believe the district court properly held: (1) that appellees did not make any definite promise that created an obligation on the part of appellees to protect Motobecane's security interest and upon which Motobecane may base its promissory estoppel claim; (2) that no bailment ever occurred in this case imposing any affirmative duties upon appellees; and (3) that appellant did not have an "adverse claim" to the securities as that term is used in § 440.8403.

It appears that appellant failed to take the necessary steps to perfect its security interest and now attempts to construct an argument which would impose liability for its loss on Patrick Oil and/or Patrick Petroleum because its debtor is now uncollectible.

For the reasons set forth above, the judgment of the district court granting summary judgment to the Defendants-Appellees, denying Motobecane's Motion for Summary Judgment, and dismissing the Complaint with prejudice is AFFIRMED in all respects.