(No. 54648.-

C. O. FUNK & SONS, INC., *et al.,* Appellants, v. SULLI-VAN EQUIPMENT, INC., *et al.* (First National Bank and Trust Co., Appellee).

*Opinion filed January 21, 1982.—Rehearing denied March 25, 1982.*

Miller & Tracy Law Offices, P.C., of Monticello, for appellants.

Perry S. Albin, of Tuscola, and Terry Mulligan, law student, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

This case involves a Uniform Commercial Code issue not heretofore considered by this court.

In March 1978 plaintiff C. O. Funk & Sons, Inc. (Funk), sold its farm implement business to defendant, Sullivan Equipment, Inc. (Sullivan). The unpaid balance of the

purchase price was secured by a security agreement covering specified inventory, equipment and the proceeds. That agreement with Sullivan authorized the sale of certain inventory, but required that Sullivan deposit 90% of the sale price in an escrow account from which Funk would receive installment payments. Sullivan financed its inventory purchases in part with a loan from the intervenor, First National Bank and Trust Company of Tuscola (bank). This loan was secured by a security agreement covering inventory, equipment, after-acquired property, and accounts receivable. Both security agreements were perfected by the filing of financing statements pursuant to Code sections 9—401 and 9—402, with Funk's the first filed. (Ill. Rev. Stat. 1977, ch. 26, pars. 9—401, 9—402.) Between June 1978 and December 1979 Sullivan was in arrears in its payments to the escrow account; a total of $29,673.73 which should have been deposited in it was instead deposited in its general business account. From the latter account Sullivan purchased inventory during this same period which far exceeded in value the amount of arrearage.

By December 1979 Sullivan was experiencing financial difficulty and planned an auction of some of its inventory. Funk then sought and obtained a temporary restraining order requiring that the net proceeds of the auction be deposited with the court, and amended its complaint to include an action for breach of contract, demanding damages in the amount of the arrearage. The bank sought and received leave to intervene to protect its interests. At that time Sullivan owed the bank $425,596.78, which was secured in part by the inventory sold at auction.

The auction produced some $115,000. Of this, the portion resulting from the sale of specific items described in the Funk-Sullivan sales agreement is concededly Funk's. Funk claims in addition only the $29,673.73 arrearage, and the circuit court of Piatt County held it was entitled to the funds. The appellate court reversed and remanded with

directions to distribute the funds to the bank. (92 Ill. App. 3d 659.) We granted leave to appeal. The controlling issue before us is whether the proceeds of the collateral sold by Sullivan were sufficiently identified to subject them to Funk's security interest when the proof of identity consists only of a showing that the account into which they were deposited was also used for the purchase of new inventory.

Funk claims that under sections 9—306 and 9—312 of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, pars. 9—306, 9—312) it has a prior perfected security interest in certain inventory sold at auction because that inventory represents proceeds of the sale of inventory which was the subject of its initial security interest. Section 9—306, in pertinent part, provides:

"(1) 'Proceeds' includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement. Money, checks, deposit accounts, and the like are 'cash proceeds'. All other proceeds are 'non-cash proceeds'.

(2) Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." Ill. Rev. Stat. 1977, ch. 26, pars. 9—306(1), (2).

Section 9—306(2) clearly provides that Funk's security interest would continue in proceeds of the sale of the original inventory, if Funk could identify those proceeds. (See Hawkland, *The Proposed Amendments To Article 9 Of The UCC. Part II: Proceeds,* 77 Com. L.J. 12 (1972).) Once identified, Funk's claim to the proceeds, in whatever form, would be superior to the bank's, because Funk held a

purchase money security interest in the original inventory (Ill. Rev. Stat. 1977, ch. 26, par. 9—312(3)) and was also the first to file (Ill. Rev. Stat. 1977, ch. 26, pars. 9—312(5), (6)). That security interest, however, continues only in "identifiable proceeds." Should Funk fail to identify those proceeds, the bank's security interest in inventory and after-acquired property entitles it to the balance of the auction proceeds.

Although the Code provides no guidance as to how proceeds might be identified, section 1—103 directs that the Code be supplemented by "principles of law and equity," and this provision has been construed to permit application of a tracing theory known in the law of trusts as the "lowest intermediate balance" rule. (*Michigan National Bank v. Flowers Mobile Home Sales, Inc.* (1975), 26 N.C. App. 690, 217 S.E.2d 108; see *Brown & Williamson Tobacco Corp. v. First National Bank* (7th Cir. 1974), 504 F.2d 998; *Universal C. I. T. Credit Corp. v. Farmers Bank* (E.D. Mo. 1973), 358 F. Supp. 317; *Associates Discount Corp. v. Fidelity Union Trust Co.* (1970), 111 N.J. Super. 353, 268 A.2d 330; *In re C. E. Pontz & Son, Inc.* (E.D. Pa. 1965), 2 U.C.C. Rep. Serv. 1120; *Girard Trust Corn Exchange Bank v. Warren Lepley Ford, Inc.* (1958), 25 Pa. D. & C. 2d 395; see generally Skilton, *The Secured Party's Rights In A Debtor's Bank Account Under Article 9 of the Uniform Commercial Code,* 1977 So. Ill. U.L.J. 120, 140-43, 152-57.) As Professor Skilton notes (1977 So. Ill. U.L.J. 120, 133 n.21), the argument that a proceeds security interest terminates when those proceeds are deposited in a bank account since they can no longer be identified has found little favor with the courts.

The rule, which operates on a common-sense view that dollars are fungible and cannot practically be earmarked in an account, provides a presumption that proceeds remain in the account as long as the account balance is equal to or greater than the amount of the proceeds deposited. The proceeds are "identified" by presuming that they remain in the account even if other funds are paid out of the account.

If Sullivan is likened to the trustee of a constructive trust imposed because he commingled funds, then the lowest-intermediate-balance rule directs that Funk's proceeds in Sullivan's account are preserved to the greatest extent possible as the account is depleted. (See, *e.g., People v. Barrett* (1950), 405 Ill. 188; *People ex rel. Nelson v. Peoples Bank & Trust Co.* (1933), 353 Ill. 479.) Under the rule, however, if the balance of the account dips below the amount of deposited proceeds, Funk's security interest in the identifiable proceeds abates accordingly. This lower balance is not increased if, later, other funds of the debtor are deposited in the account, *i.e.,* the added amounts are not subject to an equitable lien, unless the latter deposits are made in restitution. (*Restatement of Restitution* sec. 212 (1937).) Thus the claimant has no priority over other creditors to any amount in excess of the lowest intermediate balance. (See Skilton, *The Secured Party's Rights In A Debtor's Bank Account Under Article 9 of the Uniform Commercial Code,* 1977 So. Ill. U.L.J. 120, 140.) In this case, Funk cannot assert a security interest in proceeds superior to that asserted by the bank unless Funk can show that those proceeds were preserved in Sullivan's commingled account or that other inventory was purchased with those proceeds at a time, and to the extent, that those proceeds were identified in the account. The identification of the funds, as stated, is subject to the lowest intermediate balance of the account.

Funk offered no evidence of the balance of Sullivan's account during the 18 months Sullivan was in arrears in payments to the escrow account. As a consequence, the lowest intermediate balance remains unknown, and the proceeds to which Funk was entitled have not been identified as remaining in the account.

Funk argues that it established a *prima facie* case by showing that secured property was sold, that the proceeds were deposited into an account, and that other items of

inventory were purchased from that account, and that upon such showing the burden should shift to another to segregate the wrongfully commingled funds. (See *Robert P. Butts & Co. v. Estate of Butts* (1970), 119 Ill. App. 2d 242.) Were we concerned here with the rights of Funk against Sullivan this argument would have considerable merit. The bank, however, was neither responsible for Funk's position nor for the commingling and is at least as innocent as Funk. We find no principles in law or equity which dictate that the innocent third party must suffer the consequences of Funk's predicament. Section 9—306 says that the security interest attaches to identified proceeds. Since Funk is claiming a prior security interest in property which is otherwise identified as collateral belonging to the bank under its after-acquired property clause, the burden of identifying the proceeds is properly upon Funk. (*Chrysler Credit Corp. v. Bank of Wiggins* (Miss. 1978), 358 So. 2d 714, 718-19; *cf. American National Bank & Trust Co. v. Mar-K-Z Motors & Leasing Co.* (1974), 57 Ill. 2d 29; *Bell v. School District No. 84* (1950), 407 Ill. 406, 416; *General Foods Corp. v. Hall* (1976), 39 Ill. App. 3d 147, 151 (party asserting a fact or issue has burden of proof as to such fact or issue).) Funk failed to offer the proof required to identify the claimed proceeds and is not now entitled to a second opportunity to do so.

Accordingly, we affirm the judgment of the appellate court.

*Judgment affirmed.*