In re Janet Denice MARTIN, f/k/a Janet Baldwin, f/d/b/a Bottles, Bangles & Beads, Baubles, Bangles & Beads, Janet Martin and/or Janet Baldwin, Debtor.

The FIRST NATIONAL BANK OF AMARILLO, Plaintiff,

v.

Janet Denice MARTIN, f/k/a Janet Baldwin, f/d/b/a Bottles, Bangles & Beads, Baubles, Bangles & Beads, Janet Martin and/or Janet Baldwin, Defendant.

Bankruptcy No. 281–00038.
Adv. No. 281–0041.

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

July 13, 1982.

Larry Sherman, Gibson, Ochsner & Adkins, Amarillo, Tex., for First National Bank of Amarillo.

Vann D. Pressley, Amarillo, Tex., for Janet Martin, debtor, William R. Martin, and Vann D. Pressley.

Thomas A. Bunkley, Jr., Lumpkin, Barras, Reavis & Bunkley, Amarillo, Tex., for Thomas A. Bunkley, Jr., trustee.

MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

The First National Bank of Amarillo ("Bank") filed complaint against Janet Denice Martin ("Debtor"), William R. Martin, debtor's husband, and Vann D. Pressley, debtor's attorney, by which the bank seeks to recover proceeds from the sale of debtor's inventory. The bank claims that on March 4, 1981, when debtor filed her peti-

tion in bankruptcy, it could trace into the debtor, into her husband, and into her attorney proceeds of sale of inventory against which it had a perfected security interest. Alternatively, the bank seeks to impose a constructive trust in its favor upon monies which came into the possession of the debtor, her husband, and her attorney. Finally, the bank urges that the bank's debt should be excepted from discharge under § 523 of the Code. The trustee in bankruptcy has intervened, claiming entitlement to the proceeds of sale of inventory in the possession of the debtor, her husband, and her attorney. The case was submitted to the Court on motion for summary judgment, supplemented with depositions of the parties, admission of fact, and stipulations. The following summary constitutes the findings of fact which have been distilled from those depositions, admissions, and stipulations.

The debtor commenced a business in 1975 whereby she sold ladies' accessories, jewelry, and gift items at retail by leasing counters in department stores. The bank had financed the inventory from the inception of the business.

The business started losing money during the first quarter of 1979, but debtor was able to remain in business by transferring other funds, including monies from her savings account, to the business. The bank gave her several extensions of time for payment, and on July 16, 1980, all of her existing debt was renewed and extended by the debtor's execution of a new note to the bank in the principal sum of $30,000.00, payable in five equal monthly installments of $700.00 each beginning in August, 1980, with a final balloon payment of the balance due on January 22, 1981.

Predictably the Christmas season is the time of the year when maximum sales are made in the type of business in which the debtor was engaged. Her deposition reflects that her Christmas sales averaged four times that of any other month of the year.

The number of stores out of which the debtor operated in late 1980 and early 1981 is not reflected by the record. The only operation which appears to be relevant to the issues in this case is that in Klines Department Store. The working arrangement with Klines was for all sales made by the debtor to be processed through Klines' cash registers. Each month Klines would account to the debtor for the sales during the month by taking 15% of gross sales as its rental and paying over to the debtor the balance of those gross proceeds. Customarily, the debtor would deposit the Klines' check in her business checking account at The First National Bank of Amarillo.

On November 26, 1980, debtor obtained an additional loan from the bank in the sum of $11,000.00, payable in 30 days. The testimony reflected that the debtor had indicated to the bank that at least the $11,000.00 note would be paid from the 1980 Christmas sales.

On January 20, 1981, Klines accounted to the debtor for most of the 1980 Christmas sales by delivering to the debtor a check in the sum of $19,203.37. Instead of depositing the check in her business account she took the check to Amarillo National Bank, cashed it, rented a safe deposit box at that bank, and put the monies in the bank. Within the space of thirty days from the time the box was rented on January 22, 1981, the debtor made at least five additional trips to the box. On each of those occasions she took some monies out of the safe deposit box and conceded that on occasion she might have put some money back in the box where she had taken out more on the last previous visit than the amount required by her for her purposes. The testimony is clear that there were no monies in the safe deposit box at the time she put the $19,203.37 in it on January 22, 1981, and that she did not put any monies in that safe deposit box from any other sources.

The debtor and her husband had a joint checking account at West Texas State Bank in Canyon, in which the husband's income was customarily deposited. On February 13, 1981, the debtor took $5,082.00 from the safe deposit box at Amarillo National Bank and deposited it in the joint checking account in West Texas State Bank in Can-

yon. On February 18, 1981, she took the remaining balance of $6,860.00 from the safe deposit box and deposited it in the joint checking account at West Texas State Bank. On February 23, 1981, there was a balance of $10,713.56 in the joint checking account at West Texas State Bank. She and her husband executed a partition agreement, dividing the monies. She took her one-half of those monies and opened a new account in her name at Texas Bank in Amarillo.

On February 20, 1981, she received the remaining accounting from Klines. She took the check for $1,858.78 to Amarillo National Bank, cashed it, and paid $1,480.00 of it to her attorney, Vann Pressley. The remainder of the money was deposited in her account at Texas Bank in Amarillo.

On March 4, 1981, the debtor filed her petition in bankruptcy. One check in the amount of $100.00 was deposited in the account at Texas Bank on March 12, 1981, more than one week after the bankruptcy petition was filed. None of the parties were able to determine the source of those monies.

The amounts of the bank's debts in the total sum of $40,312.14 on the date the bankruptcy petition was filed, and the validity of its lien against proceeds of inventory, are unchallenged. However, the debtor, her attorney, and her husband, as well as the trustee, contend that the proceeds had become commingled so that the bank cannot trace them.

§ 9.306(d), Tex.Bus. & Com.Code, which becomes operative on the institution of bankruptcy proceedings by or against the debtor, provides:

(d) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(1) in identifiable non-cash proceeds and in separate deposit accounts containing only proceeds;

(2) in identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(3) in identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(4) in all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this Subdivision (4) is

(A) subject to any right of set-off; and

(B) limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings less the sum of (1) the payments to the secured party on account of cash proceeds received by the debtor during such period to which the secured party is entitled under Subdivisions (1) through (3) of this Subsection (d).

§ 9.306(d)(4) limits the right of a secured creditor to trace proceeds where the proceeds are commingled with other funds at the time bankruptcy proceedings are instituted. The bank contends that on the date the petition in bankruptcy was filed portions of its proceeds were not commingled with other funds, but were in a separate deposit account containing only proceeds. Therefore, the bank argues, it has retained its security interest in those proceeds by virtue of the provisions of § 9.306(d)(1). However, the trustee contends that once monies are commingled they remain commingled and cannot become uncommingled and that in this instance the proceeds became commingled when they were deposited into the debtor's personal checking account, limiting the bank in its tracing to the formula provided by § 9.306(d)(4).

The rules pertaining to the rights of a secured creditor to trace the proceeds of his secured collateral are liberally construed in favor of the creditor as evidenced by the extension of the tracing method known as the "intermediate balance rule" into the area of commercial law. *See e.g., Universal*

*CIT Credit Corporation v. Farmers Bank of Portageville*, 358 F.Supp. 317 (D.C.E.D.Mo. 1973); *In re Turner*, 13 B.R. 15 (Bkrtcy.D. Neb.1981); *In re Guaranteed Muffler Supply Company, Inc.*, 27 UCC Rept.Serv. 1228 (Bkrtcy.N.D.Ga., 1980); *Funk & Sons, Inc. v. Sullivan Equipment Co., Inc.*, 89 Ill.2d 27, 59 Ill.Dec. 85, 431 N.E.2d 370, 32 UCC Rept. Serv. 1638. The premise of the "intermediate balance rule" is that a deposit of proceeds into a commingled account remains identifiable where the commingled account has at all times since the intermingling equaled or exceeded the amount of the deposit. However, if after the intermingling all monies in the commingled account are withdrawn, the deposit of proceeds is rendered unidentifiable although monies from other sources are subsequently deposited in the same account. In the situation where the amount of the commingled account is reduced to a smaller sum than the original deposit of proceeds the latter is dissipated, except as to the balance, and funds subsequently added from other sources do not increase the balance. *Cunningham v. Brown*, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924); *Schuyler v. Littlefield*, 232 U.S. 707, 34 S.Ct. 466, 58 L.Ed. 806 (1914); *4 Collier on Bankruptcy*, § 541.13, p. 541–69 [15th ed.].

■ Utilizing the "intermediate balance rule" it appears that the bank is able to trace the proceeds. As indicated above the debtor had not added monies from other sources to the cash which she had placed in the safe deposit box at Amarillo National Bank between the periods January 22, 1981, and February 18, 1981. On February 13, 1981, after the debtor had deposited the $5,082.00 in cash which she had taken from the safe deposit box into the joint checking account at West Texas State Bank in Canyon, the balance in that joint checking account was $4,957.36. No additional monies were deposited in the joint checking account between February 14, 1981 and February 18, 1981. On that latter date the debtor removed the balance of $6,860.00 from the safe deposit box and deposited it in the joint checking account at West Texas State Bank in Canyon, Texas, resulting in the balance in the joint checking account of $11,817.36. Between February 18, 1981 and February 23, 1981, prior to the partitioning of the account, the lowest balance on deposit in the joint checking account at West Texas State Bank in Canyon was $10,684.10. The deposit of $5,356.78 by the debtor in her account at Texas Bank of Amarillo on February 23, 1981, was the first deposit ever made into that account and between that date and March 4, 1981, when the petition in bankruptcy was filed, there were no deposits to that account. There were some checks written against that account at Texas Bank and the lowest balance of funds in deposit in that account during that period between February 23, 1981 and March 4, 1981, was $5,268.79. As far as the partitioned account at West Texas State Bank in Canyon was concerned, after the debtor withdrew the $5,356.78 and opened her new account at Texas Bank the lowest balance on deposit in that checking account at West Texas State Bank in Canyon, Texas, during the period February 23, 1981 to April 17, 1981, was $4,200.00. On April 17, 1981, the debtor's husband, William R. Martin, withdrew $4,200.00 from that joint checking account at West Texas State Bank in Canyon and deposited that sum into a savings account at the bank. Since that date the balance in the savings account at West Texas State Bank has never been less than $4,200.00.

There is no apparent reason why application of the "intermediate balance rule" should be prohibited in a bankruptcy case where it's use is limited to demonstrate that on the date of bankruptcy there existed a deposit account containing the proceeds as contemplated by § 9.306(d)(1). I find that the bank has retained a valid security interest in $9,468.79 of the original $19,203.37 in proceeds from the sale of its secured inventory, being the $5,268.79 in the checking account of the debtor at Texas Bank of Amarillo and $4,200.00 in the savings account in the name of William R. Martin, at West Texas State Bank in Canyon, account number 55–899–0. The trustee's challenge to the bank's security interest is rejected.

The parties candidly admit that debtor's purpose in cashing the check from sales proceeds and depositing those proceeds in the joint checking account was to attempt to exempt those monies from the bankruptcy proceedings. They do not challenge the bank's entitlement to lien against the proceeds. The debtor and her husband contend that they were acting on advice of counsel, that since the husband was not taking bankruptcy he thought he was entitled to one-half of the monies and that, accordingly, a partition was made. Debtor claims her entitlement to an exemption in the $5,268.79 balance in Texas Bank pursuant to § 522(d)(5) of the Bankruptcy Code.

The bank claims that it should recover monies totalling $2,612.50 which were paid by the debtor to her attorney, Mr. Pressley, who had counseled with her concerning the above procedures. However, there was only $1,480.00 in monies which the debtor paid to Pressley and which the bank definitely traced to the sales proceeds. In fact, Pressley acknowledged that he knew $1,480.00 came from that second check from Klines.

I find, therefore, that the bank has retained a valid security interest in $10,948.79 of the proceeds from sale of its secured inventory and that the trustee's attack on the commingling theory should be denied. Further, I find that those funds as so traced by the bank should be recovered and that it should recover from the debtor the sum of $5,268.79 in the debtor's account number 17–367–3 at Texas Bank of Amarillo and that it should recover from William R. Martin, the husband, the amount of $4,200.00 in savings account number 55–899–0 at West Texas Savings in Canyon, Texas.

The bank should recover the sum of $1,480.00 from the attorney Vann Pressley, that sum being specifically traced by the bank to the attorney from the sales proceeds against which the bank had a security interest. Not only did Pressley counsel the debtor and advise her to so dispose of the secured proceeds, he conceded that he had actual knowledge that at least the sum of $1,480.00 which was paid over to him came from those proceeds. I conclude that the bank is entitled to claim a constructive trust in and to those transferred proceeds totalling $1,480.00.

■ As far as the dischargeability issue is concerned it is apparent that the debtor willfully and maliciously converted the proceeds of the two checks, which total $21,-062.19. She was entitled to receive those proceeds from Klines, but under the facts of this case she was under a duty to account to the bank for those total proceeds. She has embezzled those funds within the meaning of 11 U.S.C. § 523(a)(4). I conclude that, to the extent of $21,062.19, the bank's debt should be excepted from discharge.

It is, therefore, ORDERED by the Court that:

1. The First National Bank of Amarillo do have and recover of and from Janet Denice Martin the sum of TWENTY ONE THOUSAND SIXTY TWO and 19/100 ($21,062.19) DOLLARS, with interest thereon at 10% per annum from March 1, 1981; and it is further ORDERED that such debt be, and it is hereby, EXCEPTED from discharge in bankruptcy;

2. The First National Bank of Amarillo do have and recover of and from Vann Pressley the sum of ONE THOUSAND FOUR HUNDRED EIGHTY and No/100 ($1,480.00) DOLLARS, with interest from date at the rate of 9% per annum; and any recovery hereunder shall be credited against the judgment in favor of the bank against the debtor in the principal sum of $21,062.19 which is excepted from discharge;

3. The First National Bank of Amarillo do have and recover of and from William R. Martin and Janet Denice Martin all interest in and to the sum of at least FIVE THOUSAND TWO HUNDRED SIXTY EIGHT and 79/100 ($5,268.79) DOLLARS, in checking account number 17–367–3 in the name of the debtor at Texas Bank of Amarillo; and any recovery hereunder shall be credited against the judgment in favor of the bank against the debtor in the principal sum of $21,062.19 which is excepted from discharge; and

4. The First National Bank of Amarillo do have and recover of and from William R. Martin and Janet Denice Martin all interest in and to savings account number 55–899–0 in the name of William R. Martin at West Texas State Bank in Canyon, Texas; and any recovery hereunder shall be credited against the judgment in favor of the bank against the debtor in the principal sum of $21,062.19 which is excepted from discharge.

LET JUDGMENT BE ENTERED ACCORDINGLY.