MARQUETTE NATIONAL BANK, Plaintiff-Appellee, v. B.J. DODGE FIAT, INC., *et al.*, Defendants (Aurora National Bank, Garnishee; Chrysler Credit Corporation, Intervenor-Appellant).

Second District   No. 84—216

Opinion filed March 8, 1985.

Wiley W. Edmondson, of Brady, McQueen, Martin, Collins & Jensen, of Elgin, for appellant.

Stephen Sullivan and Jerome Nelson, both of Aurora, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Intervenor, Chrysler Credit Corporation (Chrysler Credit), appeals from the judgment of the trial court which awarded $45,202.97, held in two accounts on deposit with Aurora National Bank in the names of B.J. Dodge, Inc., and William W. Crafton, to Marquette National Bank (Marquette) in a garnishment action for sums due on a note executed by B.J. Dodge Fiat, Inc., and William W. Crafton and owned by Marquette. Chrysler Credit raises three issues on appeal: (1) whether the perfected security interest of Chrysler Credit is entitled to priority over the subsequent interest of Marquette, a judgment creditor by virtue of the garnishment action; (2) whether Marquette's judgment against "B.J. Dodge Fiat, Inc." allows it to obtain a turnover for an account held in the name of "B.J. Dodge, Inc."; and (3) whether the judgment of the Federal district court renders the issue of Chrysler Credit's interest in the subject account *res judicata*.

The events leading to the present action began on October 22, 1979, when William W. Crafton, on behalf of B.J. Dodge Fiat, Inc., executed and delivered a note, due on February 22, 1980, to Marquette National Bank for $84,000. On November 28, 1979, Chrysler Credit received from B.J. Dodge a corporation signature card, corporate resolution, corporate form signatory authorization, corporate acknowledgement, dealer payment authorization, vehicle financing and repurchase agreement, and financing statement, thus establishing a business relationship whereby Chrysler Credit would finance the purchase of motor vehicles by B.J. Dodge. The financing statement, filed with the Illinois Secretary of State on November 30, 1979, covered:

> "1) New and used Motor Vehicles and Chattel Paper, whether now owned or hereafter acquired. 2) Accounts, Contract Rights, Documents, Instruments, General Intangibles, Consumer Goods, Equipment, Fixtures, Inventory of Automobile Parts and Accessories, Leasehold Improvements, whether now owned or hereafter acquired. 3) All proceeds of the property covered by the statement, including, but not limited to Money, Instruments, Accounts, General Intangibles, Chattel Paper, and Motor Vehicles received in trade."

On May 14, 1980, Chrysler Credit filed a complaint against B.J. Dodge in Federal district court seeking a temporary restraining order and preliminary injunction to prohibit B.J. Dodge from disposing of property listed on an attached schedule which consisted of a liquidated dealer inventory and items covered by the financing statement; a writ of replevin; and judgment against B.J. Dodge for possession of the property, value of property not delivered, and damages for deten-

tion. A temporary restraining order (TRO) was issued by the Federal district court on the same day.

On May 19, 1980, in the circuit court of Kane County, Marquette National Bank filed a complaint and confession on judgment note for $89,200 consisting of principal plus interest and fees due on the note executed by B.J. Dodge but not paid as promised on February 22, 1980, and a garnishment summons was served upon Aurora National Bank as garnishee. At the time the garnishment summons was served, Aurora National Bank had in its possession $44,882.95 in which B.J. Dodge had an interest, and $320.02 in which William W. Crafton had an interest. Five checks had been drawn on the B.J. Dodge account, two to Marquette (for $8,035 and $11,000), two to Chrysler Credit (for $5,076.99 and $6,438.87), and one to B.J. Dodge (for $10,000), the funds for which Aurora retained possession.

On May 20, 1980, the Federal district court entered a preliminary injunction prohibiting B.J. Dodge from transferring, selling, moving, or in any way disposing of any of the vehicles listed on the liquidated dealer inventory and any items covered by the financing statement and an order of replevin for those same vehicles and items.

On June 6, 1980, the Federal district court entered judgment in favor of Chrysler Credit, stating, *inter alia*, that Chrysler Credit had a fully perfected first lien against all of the motor vehicles, automotive parts, equipment, accessories, supplies, machinery, and equipment, furniture and fixtures replevied and that no intervening creditors had appeared in the cause or asserted a claim in any way as to the validity of the security interest and first lien asserted by Chrysler Credit, and ordering that the sole and exclusive possession of the property replevied was in Chrysler Credit and that damages were assessed in the amount of $526,906 plus interest for a total of 65 vehicles, diminution of present value of replevied motor vehicles, and expenses.

On July 10, 1980, Marquette moved for judgment in the amount of $45,202.97 against Aurora National Bank in the circuit court, and notice of the motion was sent to Chrysler Corporation. Chrysler Corporation responded by stating that after contacting Marquette's counsel to determine Chrysler's involvement in the proceedings, it believed it was entitled to the two checks drawn on B.J. Dodge's account and made payable to Chrysler Credit and requested notice of any hearing to determine the disbursement of B.J. Dodge's funds. On September 9, 1980, the trial court ordered Aurora National Bank to pay Marquette the balance of B.J. Dodge's account, minus the funds covered by the five checks, and the balance of William W. Crafton's account, a total of $4,652.11, and set hearing as to ownership of the remainder

of the funds for a later time.

On October 29, 1981, Marquette sought a temporary restraining order to restrain Aurora from disbursing funds to Chrysler Credit, stating, *inter alia*, that it obtained a judgment for $89,200 against B.J. Dodge Fiat and William W. Crafton and a garnishment summons was served on Aurora; that Chrysler Credit obtained leave to intervene claiming priority as to funds held by Aurora; that without notice to Marquette, Chrysler Credit obtained an order from the Federal district court requiring Aurora to turn over the disputed funds; and that the district court subsequently vacated its order in part and a further proceeding to vacate the remainder of the order was pending. The record on appeal does not contain a copy of Chrysler Credit's motion to intervene or copies of these particular orders of the Federal district court. A TRO was entered that day but expired without the issuance of a preliminary injunction. At some point prior to November 24, 1981, the funds represented by the two checks made payable to Marquette, totalling $19,035, were apparently paid by Aurora to Marquette.

The parties agreed to present the issues to the trial court on the basis of briefs, affidavits, and arguments of counsel. Marquette submitted the affidavit of its attorney and a memorandum of law, in which it primarily argued that Chrysler Credit had to show that it had ownership rights in the disputed property and failed to show the source of the funds held by Aurora.

In its memorandum of law, Chrysler Credit argued that the rights of Marquette were not entitled to priority over Chrysler Credit's secured interest because the financing statement was filed before the garnishment action; that in his affidavit, Daniel Koester, the Arlington Heights branch manager of Chrysler Credit, stated the bank account "is part of the collateral security for the indebtedness due Chrysler Credit" and his affidavit was not controverted by any affidavit filed by Marquette; that Marquette's judgment was against "B.J. Dodge Fiat," which was different from "B.J. Dodge" and thus could not get a turnover of an account in the name of "B.J. Dodge"; and that the trial court should defer to the Federal district court.

In a letter to the parties, the trial court found in favor of Marquette, relying on *C.O. Funk & Sons, Inc. v. Sullivan Equipment, Inc.* (1982), 89 Ill. 2d 27, 431 N.E.2d 370, and stating that the controlling factor was Chrysler Credit's inability to identify proceeds. The trial judge refused to defer to the Federal district court, believing that would be avoiding a decision that should be made in the State circuit court, and did not consider the variance in corporate designa-

tion to be of controlling significance. In a subsequent written order, the trial court awarded Marquette $45,202.97.

■ Chrysler Credit first argues that Marquette's lien was not entitled to priority over Chrysler Credit's perfected security interest. Chrysler Credit perfected its security interest by filing the financing statement (see Ill. Rev. Stat. 1979, ch. 26, par. 9—303, and other paragraphs cited therein) on November 30, 1979. Marquette became a lien creditor on May 19, 1980, since, under Illinois law, a creditor becomes a lien creditor within the meaning of section 9—301 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 9—301) when a writ of execution is placed in the hands of the sheriff. (Ill. Ann. Stat., ch. 26, par. 9—301, Illinois Code Comment, at 32 (Smith-Hurd Supp. 1984).) Section 9—301 provides in pertinent part:

"(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of

(a) persons entitled to priority under Section 9—312;

(b) a person who becomes a lien creditor before the security interest is perfected;

* * *

(3) A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment."

Thus, by negative implication, a perfected secured creditor defeats a lien creditor. J. White & R. Summers, Uniform Commercial Code sec. 25—2, at 1031 (2d ed. 1980); see also Ill. Ann. Stat., ch. 26, par. 9—301, Illinois Code Comment, at 32 (Smith-Hurd Supp. 1984).

The property to which Chrysler Credit claims superior rights is the funds deposited in the demand account. A "demand account" is a "deposit account" under the Code. (See Ill. Rev. Stat. 1979, ch. 26, par. 9—105(1)(e).) Chrysler Credit argues that it has a right to that account both as original collateral to its security agreement and as proceeds from the sale of collateral.

In support of its contention that the demand account was part of the original collateral for the security agreement with B.J. Dodge, Inc., Chrysler Credit at oral argument and in its memorandum of law below ﹒elied on the affidavit of Daniel Koester, in which Koester stated that "[t]he bank account in the name of 'B.J. Dodge, Inc.,' at the Aurora National Bank, is a part of the collateral security for the indebtedness due to Chrysler Credit Corporation from B.J. Dodge,

Inc. \*\*\*," arguing that since this affidavit is not controverted by the affidavit of Marquette, the statements therein must be taken as true.

■■ We note that while Chrysler Credit briefly mentions Koester's affidavit in the statement of facts portion of its appellate brief, it does not raise this contention in the argument section of that brief. Supreme Court Rule 341 states that "[p]oints not argued [in the appellant's brief] are waived and shall not be raised \*\*\* in oral argument \*\*\*." (87 Ill. 2d R. 341(e)(7); *Board of Education v. Ballweber* (1983), 96 Ill. 2d 520, 527, 451 N.E.2d 858.) Here, where Chrysler Credit did not make this argument in its appellate brief, we consider the argument waived.

■■ However, even if we were to ignore considerations of waiver, Chrysler Credit's argument would nevertheless fail. While it is generally true that well-alleged facts within an affidavit must be taken as true when they are not contradicted by counteraffidavit (*Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 248, 421 N.E.2d 231; *Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 507, 396 N.E.2d 34), that rule is typically applied, by virtue of Supreme Court Rule 191(a) (87 Ill. 2d R. 191(a)), only to affidavits in proceedings under sections 2—1005, 2—619, and 2—301(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 2—1005, 2—619, 2—301) and does not apply to affidavits filed in conjunction with all other types of civil proceedings. (*People v. Frieder* (1980), 90 Ill. App. 3d 116, 121, 413 N.E.2d 432.) Here, there is no issue as to summary judgment, involuntary dismissal, or jurisdiction over the person so as to invoke the requirements of Rule 191(a). Nonetheless, an examination of Koester's affidavit shows that the portion on which Chrysler Credit relies does not state facts but rather merely states a general conclusion without reference to specific underlying facts, personally known to Koester, to support that conclusion. The trial court is not required to accept as true conclusions in an affidavit unsupported by facts which is submitted as evidence.

■■ Chrysler Credit also maintains that the demand account is part of the original collateral as an "account," or alternatively, a "general intangible." However, an "account," as contemplated by the Uniform Commercial Code, is the ordinary commercial account receivable (Ill. Ann. Stat., ch. 26, par. 9—106, Uniform Commercial Code Comment, at 71 (Smith-Hurd 1974)), and "general intangibles" refers to miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security (Ill. Ann. Stat., ch. 26, par. 9—106, Uniform Commercial Code Comment, at 70-71 (Smith-Hurd 1974)) and excludes money. (Ill.

Ann. Stat., ch. 26, par. 9—106, Illinois Code Comment, at 69 (Smith-Hurd 1974).) Finally, in direct contradiction of Chrysler Credit's argument that the demand account is part of the original collateral for the security agreement, section 9—104(1) of the Uniform Commercial Code excludes deposit accounts as a type of collateral under Article 9 except as proceeds under section 9—306. See Ill. Ann. Stat., ch. 26, par. 9—105, Uniform Commercial Code Comment, at 67 (Smith-Hurd 1974).

Chrysler Credit may have rights to the deposit account as cash proceeds (see Ill. Rev. Stat. 1983, ch. 26, par. 9—306(1)) if those proceeds are identifiable. (Ill. Rev. Stat. 1983, ch. 26, par. 9—306(2).) The trial court found against Chrysler Credit primarily because of an inability to identify proceeds and relied on *C.O. Funk, Inc. & Sons v. Sullivan Equipment, Inc.* (1982), 89 Ill. 2d 27, 431 N.E.2d 370. In that case, Funk could not assert a security interest in proceeds superior to that asserted by another creditor unless Funk could show that proceeds from the sale of goods in which Funk had a security interest were preserved in a commingled account or that other inventory was purchased with those proceeds at a time, and to the extent, that those proceeds were identified in the account. (89 Ill. 2d 27, 32, 431 N.E.2d 370.) Our supreme court adopted the lowest-intermediate-balance rule, explaining that:

"The rule, which operates on a common-sense view that dollars are fungible and cannot practically be earmarked in an account, provides a presumption that proceeds remain in the account as long as the account balance is equal to or greater than the amount of the proceeds deposited. The proceeds are 'identified' by presuming that they remain in the account even if other funds are paid out of the account." (89 Ill. 2d 27, 31, 431 N.E.2d 370.)

The court then went on to disallow Funk's claim on the basis that Funk offered no evidence of the balance of the debtor's account during the period the debtor was in arrears, so that the lowest intermediate balance was unknown, and Funk was not given a second opportunity on review to make the required showing. 89 Ill. 2d 27, 32-33, 431 N.E.2d 370.

An examination of the record on appeal reveals that Chrysler Credit made little, if any, effort below to show the source of the funds in the demand account or the basis for the two checks B.J. Dodge issued and made payable to Chrysler Credit. In its memorandum of law presented to the trial court, Chrysler Credit merely stated that "two of the checks to which the account is subject were payable to Chrysler

Credit and under the 'floor plan' financing extended to Chrysler ***
would represent proceeds from autos sold by defendant B.J. DODGE -
FIAT, INC.," and offered no real proof of this assertion. In its appel-
late brief, Chrysler Credit compares the amount of one of the checks
to one of the item sums on the liquidated dealer inventory to establish
that the check represented the proceeds from the sale of a particular
automobile, but there is no indication that this was ever pointed out
to the trial court. Furthermore, the fact that the amount on one of
the checks is identical to an amount on the liquidated dealer inventory
is not sufficient evidence to identify the funds. Chrysler Credit did
not supply evidence so that the check was traceable to the proceeds
from the sale of an automobile which it could have done by, for exam-
ple, establishing the date of the sale of the automobile and showing
the proximity between that date and the date the check was issued to
Chrysler Credit. Finally, Chrysler Credit has never explained below or
on appeal what the amount of the second check represents or offered
any evidence tracing the remaining funds in the demand account to
its security interest. Chrysler Credit offered no evidence of the bal-
ance of the account during the period of time in issue in an effort to
trace the funds under the "lowest intermediate balance" rule. In view
of this lack of Chrysler Credit's evidence, we believe that the trial
court correctly found that Chrysler Credit failed to identify proceeds,
and thus was not entitled to the funds in the demand account or to
receive payment from the funds for the two checks payable to Chry-
sler Credit which the Aurora National Bank had not paid out at the
time the garnishment summons was served.

■ Chrysler Credit next argues that Marquette is not entitled to
any of the funds because it held a note executed by "B.J. Dodge Fiat,
Inc." while the funds in the demand account belonged to "B.J. Dodge,
Inc." The trial court found the difference in the corporate designation
insignificant, and we see no reason to overturn that finding. There is
no contention, yet alone any evidence, that two different corporations
are actually involved or even that different corporate officers are in-
volved. The two names, only slightly different from one another, rep-
resent the same entity, and thus this creates no bar to Marquette's
garnishment of the demand account.

■ Chrysler Credit's final argument on appeal is that the Federal
district court has already determined the issue of Chrysler Credit's
security interest in the account as against B.J. Dodge, and since Mar-
quette's rights are only the same as those of B.J. Dodge, the issue is
*res judicata* as to Marquette.

While Marquette may "step into the shoes" of the debtor, Mar-

quette is not bound by a default judgment against B.J. Dodge where Marquette was not notified of the Federal proceedings so as to be able to prevent default and to be given an opportunity to assert its claims. *Res judicata* may be used only if the parties involved are the same (*Hays v. Louisiana Dock Co.* (1983), 117 Ill. App. 3d 512, 516, 452 N.E.2d 1383), and Marquette was made a party to the Federal action only after judgments were entered. Furthermore, the Federal district judge specifically found in the default order that no intervening creditors had appeared, and no one had asserted a claim as to the validity of the security interest and first lien of Chrysler Credit. Thus, we conclude that Marquette was not barred from raising its claims in the State court.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

NASH, P.J., and STROUSE, J., concur.