**BOMBARDIER CAPITAL, INC.**

v.

**KEY BANK OF MAINE, et al.**

Supreme Judicial Court of Maine.

Argued March 16, 1994.

Decided April 8, 1994.

Carl E. Kandutsch (orally), Verrill & Dana, Portland, for plaintiff.

Jonathan T. Harris (orally), Black, Lambert, Coffin & Rudman, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN and CLIFFORD, JJ.

WATHEN, Chief Justice.

Defendant Key Bank of Maine (the "Bank") appeals from a summary judgment entered in favor of plaintiff Bombardier Capital, Inc. ("Bombardier") in the Superior Court (Kennebec County, *Chandler, J.*). The court ruled that the Bank converted Bombardier's funds and assessed damages of $45,-073.84. Both parties have a security interest in proceeds deposited in a commingled checking account. At issue is the measure of Bombardier's damages for a wrongful setoff by the Bank. The Bank contends that the court erred by refusing to apply the "lowest intermediate balance rule" on a pro rata basis. We agree with the Bank, and we vacate and remand for the entry of a judgment for Bombardier in the amount of $22,-884.19.[1]

Bombardier brought suit against Sherlock Homes, Inc. ("Sherlock"), the Bank, and others. Bombardier alleged that it had a security interest in proceeds deposited in Sherlock's checking account, and that the Bank wrongfully converted Bombardier's funds when it setoff the account to satisfy Sherlock's debt to the Bank. Both parties moved for a summary judgment.

The undisputed facts may be summarized as follows: Sherlock is a corporation that sold mobile homes. Bombardier entered into a security agreement with Sherlock and provided floor plan financing[2] for Sherlock to purchase mobile homes from two particular

---

1. This figure differs from the Bank's calculation of Bombardier's pro rata share of the proceeds. The Bank's calculations contradict undisputed facts presented at the hearing on the motion for a summary judgment. For example, the amount of Bombardier's proceeds deposited on 10/01/91 was $47,395.00, not $47,432.50, as shown in the Bank's table.

2. Floor plan financing is a common form of wholesale financing whereby a creditor advances sums to pay for inventory, acquiring a security interest in the debtor's inventory and the resulting proceeds. *See, e.g., Chrysler Credit Corp. v. Whitney Nat'l Bank,* 798 F.Supp. 1234, 1236 (E.D.La.1992); *Universal C.I.T. Credit Corp. v. Farmers Bank of Portageville,* 358 F.Supp. 317, 320 (E.D.Mo.1973). In turn, the debtor agrees to remit the advances on sale of the inventory. *Id.*

manufacturers. Bombardier sent notice to the Bank of its perfected security interest in its portion of the inventory and proceeds. Subsequently, Sherlock entered into another floor plan financing agreement granting the Bank a security interest in all of its inventory and proceeds.[3]

In 1991 Sherlock sold two mobile homes financed by Bombardier and deposited the proceeds in its checking account at the Bank on October 1 and 16. On November 4, Sherlock then drafted two checks totaling $59,843.53, to repay Bombardier for the units. After the proceeds were deposited, but before the checks were presented, the account balance dropped to $21,793.84, a figure well below the sum of the checks. When Bombardier presented the checks for payment on November 14, Sherlock's account contained sufficient funds to cover the checks and the Bank provisionally debited the checks from the account, leaving an account balance of $32,495.36. On that same date, however, the Bank demanded payment from Sherlock by 5 p.m. of the following day for mobile home units subject to the Bank's funding and sold out of trust, i.e., sold without paying the Bank for its loans on those units. On the following day, the Bank froze Sherlock's account to assure adequate funds for its payment. Before the deadline for final acceptance of the checks presented by Bombardier, the Bank revoked the debit and applied the entire account balance to its indebtedness.[4]

Based on these undisputed facts, the Superior Court held as a matter of law that Bombardier's security interest in proceeds was traceable to funds in the checking account. Because the account balance had fallen below the amount of proceeds claimed by Bombardier, the court awarded $45,078.34, a sum equal to the lowest intermediate balance, $21,793.84, plus $23,280 of proceeds from later sales of Bombardier inventory deposited before the Bank exercised its setoff. The Bank appeals.

The Bank acknowledges that it converted some of Bombardier's property.[5] It argues, however, that Bombardier is entitled to only $22,778.78 in damages, not the $45,073.84 awarded by the Superior Court. The Bank contends that the court erred by considering the Bank's conduct and by failing to apply the lowest intermediate balance rule pro rata.

Both parties had a security interest in a portion of Sherlock's inventory. Both security interests "continued in any identifiable proceeds" of the secured collateral. 11 M.R.S.A. § 9–306(2) (Supp.1993). Any proceeds from the sale of collateral deposited in Sherlock's account rightfully secure the debt owed to the secured party. If we consider each party separately, Bombardier would have a security interest in $59,843.53 of proceeds, and the Bank would have a security interest in $88,906.17 in proceeds. The problem arises because the account balance was insufficient to satisfy both debts. Therefore, in order to award damages for conversion, the court was required to trace that portion of the account balance identifiable as Bombardier proceeds.

The Uniform Commercial Code neither defines "identifiable proceeds" nor suggests how to allocate proceeds in a commingled account. In fact, turning to the Code for

---

3. Although the Bank held a blanket security agreement, it did not assert its rights to any of the proceeds from the sale of that portion of Sherlock's inventory financed by Bombardier. Thus, there is no issue of priority.

4. Banks are required to accept or reject checks by midnight of the next business day after they are presented for payment. 11 M.R.S.A. §§ 4–104(1)(h), 4–301(1) (Supp.1993).

5. The gist of conversion is the invasion of a party's possession or right to possession. *Northeast Bank of Lewiston & Auburn v. Murphy*, 512 A.2d 344, 347 (Me.1986). "There can be no

conversion of property by one who has a right to the property." *Leighton v. Fleet Bank of Maine*, 634 A.2d 453, 457 (Me.1993). The majority rule is that if a bank has actual or constructive notice of another creditor's security interest in the account, setoff to satisfy a debt owed to the bank is improper, *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 798 F.Supp. 1234, 1243 (E.D.La.1992), and is a conversion of the secured interest. *Nat'l Acceptance Co. of America v. Virginia Capital Bank*, 498 F.Supp. 1078, 1085 (E.D.Va.1980). Damages equal the value of the converted property at the time of conversion. *Ocean National Bank of Kennebunk v. Diment*, 462 A.2d 35, 40 (Me.1983).

guidance on this issue is "like seeking advice of the Sphinx." Robert H. Skilton, *The Secured Party's Rights in a Debtor's Bank Account Under Article 9 of the Uniform Commercial Code,* 1977 S.Ill.U.L.J. 120, 207 (1977) [hereinafter *"Secured Party's Rights"*]. Instead the majority of courts have applied by analogy the "lowest intermediate balance rule" found in the equitable law governing trusts and restitution. *See, e.g., Harley–Davidson Motor Co. v. Bank of New England,* 897 F.2d 611, 620 (1st Cir.1990); *Restatement (Second) of Trusts* § 202 cmt. j [hereinafter *"Restatement"*].

Trust law, however, with its equitable solutions designed to protect innocent beneficiaries, does not directly address the issue presented by this secured transaction problem. *Secured Party's Rights,* 1977 S.Ill.U.L.J. at 207. Trust law applies the lowest intermediate balance rule when, after commingling the beneficiary's money with her own, the trustee draws out funds and dissipates them. *Restatement* § 202 cmt. j. For example, T is trustee for B of $1000. T deposits B's money together with $1000 of her own money in a bank. T then withdraws all but $500 and spends it. T later deposits $1000 of her own money back into the account. B is entitled to $500, the lowest intermediate balance.[6] *Restatement* § 202 cmt. j, illus. 20. When more than one beneficiary has an interest in

a commingled account, however, the rule is applied pro rata. *Restatement* § 202 cmt. n & illus. 28, 29. Under this formulation, T deposits the $1000 he holds in trust for B along with $2000 he holds in trust for B2 in T's personal account. T then withdraws and spends all but $1500. The lowest intermediate balance is prorated so that B is entitled to $500 and B2 is entitled to $1000. *Id.*[7] Under this rule, neither beneficiary receives the full lowest intermediate balance, but each recovers her proportionate share of the lowest intermediate balance.[8]

Applying these rules to the instant case, if Bombardier were the only secured creditor it would be entitled to the lowest intermediate balance before the checks were presented for payment, plus any proceeds identifiable to Bombardier deposited after that time. Using this rule the Superior Court arrived at a figure of $45,073.84. Here, however, there are two secured creditors. Recognition of both security interests requires continuous prorating of the account balance. Each time the balance falls below the amount necessary to satisfy both debts, it must be prorated. Appendix A documents the appropriate calculations. As of November 14, the account contained proceeds totalling $88,906.17. Prorating this amount by the proportion each creditor was entitled to receive yields $22,884.19 in identifiable proceeds traceable to

---

6. Applying this trust principle to a secured transaction works in the following manner: Assume a creditor has a security interest in a piece of inventory held by the debtor for sale. A debt of $1000 is secured by the item of inventory. If the debtor sells the item for $1000, which is deposited in the debtor's bank account, the creditor then has a security interest worth $1000 in that account. If, without paying the creditor, the debtor withdraws all but $500 from the account and disburses it, the creditor's security interest in the account drops to $500. Even if the debtor later deposits $500 more from another source into the account, the security interest still extends only to $500, the lowest intermediate balance of the account. *Restatement* cmt. j & illus. 20–22. (This result may change if, when depositing additional funds, the debtor manifests an intent to restore the collateral. *See Restatement* § 202 cmt. m. That did not happen in this case.)

7. Again, translating into the realm of secured transactions, creditor A has a $1000 priority security interest in item X, and creditor B, has a $2000 priority security interest in item Y. Debtor sells both items and deposits $3000 in his

bank account, giving A and B priority security interests in $1000 and $2000, respectively, in the account. Debtor then withdraws all but $1500 and spends it. A and B to be equitable, must share the lowest intermediate balance pro rata. Therefore A is entitled to $500 and B is entitled to $1000. Note that, as in this case, there is no priority dispute in the example.

8. For simplicity of calculation, it should be noted that the same result is obtained if each party's security interest is reduced by a "reduction factor" which is the ratio of the lowest intermediate balance to the total value of all existing security interests at that time. In the example in the footnote 7 above, the reduction factor is one half, found by dividing $1500, the lowest intermediate balance, by $3000, the total of the then-existing security interests. Multiplying the value of each party's old security interest, $1000 and $2000, respectively, by the reduction factor, one half, gives the new value of the security interests, $500 and $1000, respectively.

Bombardier and $66,021.98 traceable to the Bank. Because the Bank was entitled to $66,021.98, it converted only the remaining portion of the lowest intermediate balance. Under this analysis, Bombardier's damages equal $22,884.19.

Bombardier argues that it is improper to apply the lowest intermediate balance rule pro rata because such an application assumes that the parties are equally innocent. Bombardier's argument points up the difficulties involved in borrowing concepts from trust law to solve legal conflicts between secured parties. In the context of trusts, the pro rata rule identifies the trustee as a wrongdoer and assumes that both beneficiaries are equally innocent. *Restatement* § 202 cmt. n. Here, Bombardier argues, the parties are not equally innocent because the Bank acted wrongfully in setting off the account knowing that Bombardier also had a security interest in funds in the account. Therefore, Bombardier urges us to uphold the Superior Court's application of the lowest intermediate balance rule.

There is authority for considering a bank's behavior in situations similar to that presented here. In *Brown & Williamson Tobacco Corp. v. First Nat'l Bank of Blue Island*, 504 F.2d 998, 1000 (7th Cir.1974), the defendant bank, knowing that the plaintiff creditor had a security interest in the funds, obtained authorization from the debtor to use most of its account balance to satisfy an unsecured bank loan. *Id.* at 1001. That action drained the account of sufficient funds to satisfy plaintiff's loan. *Id.* The court held that plaintiff had a priority interest and was entitled to the proceeds identifiable using the lowest intermediate balance rule. *Id.* at 1004. The identifiable funds were not prorated between plaintiff and defendant because defendant had interfered with plaintiff's valid security interest and prevented plaintiff from enjoying that interest. *Id.* at 1004 n. 4. "Defendant must pay the price for its action. Otherwise [the court] would be placing roses around the wrong horse." *Id.* In *Brown*, however, the defendant bank asserted no security interest in the funds, *id.* at 1000, which meant that there was no basis on which to apply the pro rata rule. Another

court has held that tracing rules are subject to "the equitable discretion of the court." *In re Intermountain Porta Storage, Inc.*, 74 B.R. 1011, 1016 (D.Colo.1987) (where funds are commingled, court may exercise discretion and apply lowest intermediate balance rule to trace proceeds). At least two courts, however, have stated that, when the parties are not equally innocent, the proper remedy is simply to place the burden of proof on the party less innocent to demonstrate its interest in the account. *See Ex parte Alabama Mobile Homes, Inc.*, 468 So.2d 156, 161 (Ala. 1985); *C.O. Funk & Sons, Inc. v. Sullivan Equipment, Inc.*, 89 Ill.2d 27, 59 Ill.Dec. 85, 88, 431 N.E.2d 370, 373 (1982). Here, the Bank has identified the amount of proceeds traceable to it under the pro rata rule.

In this instance, we determine that the law borrows a concept from equity without adopting the entire panoply of equitable principles. Conversion entitles a party to damages equaling the value of its property at the time of the conversion, and to award Bombardier anything more than its pro rata share would result in a windfall. Bombardier did not include a plea for punitive damages in its claim, nor has it met the high burden of proof required for punitive damages. *Tuttle v. Raymond*, 494 A.2d 1353, 1361, 1363 (Me.1985) (punitive damages awarded only upon showing clear and convincing evidence of malice).

The entry is:

Judgment vacated. Remanded for the entry of a judgment in favor of plaintiff in the amount of $22,884.19.

All concurring.