In re David Leslie **PITCOCK**, Debtor.

David Leslie **PITCOCK**, Plaintiff,

v.

**FIRST BANK OF MULESHOE,**
Defendant.

Bankruptcy No. 595–51056–12.
Adversary No. 596–5043.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

May 8, 1997.

---

R. Byrn Bass, Jr., Lubbock, TX, for debtor.

Johnny Actkinson, Farwell, TX, for First Bank of Muleshoe.

Walter O'Cheskey, Lubbock, TX, trustee.

## MEMORANDUM OF OPINION ON COMPLAINT TO DETERMINE EXTENT AND VALIDITY OF LIEN

JOHN C. AKARD, Bankruptcy Judge.

David Leslie Pitcock, the Debtor in the captioned Chapter 12 case, filed a motion to determine the validity and priority of lien on pasture rents paid to the Debtor. without ruling on the validity of the lien, the court finds that the value of the lien, if it did exist, is zero. Therefore the lender, First Bank of Muleshoe (Bank), is an unsecured creditor.[1]

### FACTS [2]

For a number of years the Debtor engaged in a family farming business in Bailey and Lamb Counties, Texas. A normal custom for farmers in the area is to borrow money to plant crops, give the lender a security interest in the crops, and repay the note after harvest.

On March 4, 1995 the Debtor executed and delivered to the Bank a Promissory Note for

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No.33 of the Northern District of Texas contained in order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(K).

2. This court adopts the Stipulation of Facts (with witnesses and exhibit lists) filed by the parties on October 15, 1996. Only the facts necessary to render a decision are recited.

$25,000 with a variable interest rate. The note was due on November 15, 1995. The Bank properly perfected its security interest by filing a UCC–1 Financing Statement with the Texas Secretary of State. The Debtor received the full $25,000 from the bank in four payments between March 14 and May 15, 1995.

The security agreement granted a security interest in inventory, equipment, farm products, accounts, general intangibles and all proceeds from the property. The agreement specifically listed a security interest in "1995 crops: 120 acres Peas, 80 acres Haygrazer, 180 acres Wheat, any and all equipment" listed in an attached schedule. The security agreement did not mention pasture rents.

The Debtor owns 80 acres of farm land which he claimed as exempt. For the 1995 crop year, he planted peas, haygrazer and wheat on his 80 acres and the 320 acres he rented in Lamb County. The crops were never harvested and sold.

During the 1995 crop year the Debtor pastured cattle "on the gain." He also grazed out the haygrazer and some of the wheat In pasturing cattle "on the gain," the cattle are weighed before they are placed on the land. They graze on the land and are weighed again when they are removed. Then the landowner or the tenant is paid so many cents per pound on the weight the cattle gain.

In March 1995, the Debtor made an agreement with Bovina Feeders whereby he would pasture approximately 200 head of cattle on the wheat he planted on the property in Lamb county. The agreement provided for payment of $.30 per pound "on the gain". The cows went on the pasture in March and came off in early June. On June 21, 1995 he received a check for $9,807.07 from Bovina Feeders for the gain. In the ordinary course of business he deposited the check into his bank account and used the money to pay bills and living expenses.

The Debtor also planted part of the Lamb county property with haygrazer. Around July 1, 1995 he entered into a similar agreement with Springlake Feedyard whereby he would pasture approximately 250 head of cattle for $.25 per pound "on the gain." These cows were removed in September. On October 18, 1995, the Debtor received $6,658.50 from Springlake Feedyard for the gain on the 250 head of cattle. Again, in the ordinary course of business the Debtor deposited the $6,658.50 in his account and used the funds to pay bills and living expenses. At the time the Debtor deposited the checks into his account, he was not in default to the Bank on the Note and Security Agreement of March 4. The Debtor filed his Chapter 12 case on December 1, 1995.

## ISSUE

The issue before the court is whether the Bank had a security interest in the pasture rents and to what extent that security interest existed at the time the Debtor filed bankruptcy.

## POSITIONS OF THE PARTIES

The Debtor contends that the Bank's lien did not extend to the receipt of pasture rents; therefore the Bank is an unsecured creditor. Further, the Debtor argues that even if the Bank did have a lien on the rents, the Debtor had the right to use the money in the ordinary course of business at a time when his obligation to the Bank was not in default. The Bank asserts that its lien extended to the pasture rents and, thus, it is a secured creditor to the extent of the rents the Debtor received.

## APPLICABLE STATUTES

### 11 U.S.C. § 506 Determination of secured status.

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the

amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

## 11 U.S.C. § 541 Property of the estate.

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

### DISCUSSION

■ The Debtor asserts that the Bank's lien does not extend to pasture rents. The Bank, however, believes the language of its security agreement is broad enough to encompass them. Because the security agreement makes no mention of pasture rents, the court will reserve comment on whether the lien extends to the pasture rents. The court holds, however, that even if the lien extend to the pasture rents, the Bank is still an unsecured creditor because the collateral covered by the security agreement was not in the Debtor's possession at the time of filing the bankruptcy.

■ Assuming *arguendo* that the Bank had a security interest in the pasture rents, § 506(a) of the Bankruptcy Code [3] states that a secured creditor has a secured claim only "to the extent of the value of such creditor's interest in the estate's interest in such property." The secured creditor cannot have any greater interest in the property than the Debtor's estate has in the property. *In re Byrd,* 92 B.R. 238 (Bankr.N.D.Ohio 1988). Additionally, § 541(a) provides that the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Therefore, in order for the estate to have an interest in the property, the debtor must have had an interest in the property at the time he filed his petition. *In re Paul,* 83 B.R. 709, 714 (Bankr.D.N.D.1988).

Combining §§ 506(a) and 541(a), a secured creditor has a secured claim only to the extent that a debtor had an interest in the property at the time of the filing. Any claim beyond the debtor's interest in the property at the time of filing is, by default, an unsecured claim under § 506(a).

At the time of filing the petition, the Debtor did not have any interest in the collateral. The crops did not exist. They could not be severed, harvested or sold. The Debtor deposited the money received from the pasture rents and the Debtor used it to pay bills and living expenses. If the lien extended to the pasture rents, then the pasture rents became the collateral in lieu of the crops, but the Debtor spent that collateral. Where collateral was transferred by "the debtor prior to the commencement of its bankruptcy case, the debtor retained no interest therein, and the transfer has not been set aside, the estate has no interest therein and secured claim status cannot be based on a lien against the transferred collateral." *In re Senior–G & A Operating Co., Inc. (PSI, Inc. v. Aguillard),* 957 F.2d 1290, 1301 (5th Cir.1992) (citing COLLIER ON BANKRUPTCY ¶ 506.04). Therefore, even if the lien extended to the pasture rents, the collateral disappeared as the rents were spent. The Bank can no longer claim secured status as to the rents. The Bank has an unsecured claim.

In a Kentucky case, *In re Garrison,* 95 B.R. 461 (Bankr.E.D.Ky.1988), the debtor

---

**3.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

disposed of collateral prior to filing the petition. The debtor sold the creditor's collateral to a pawn shop, then filed for Chapter 13 relief. The trustee objected to the creditor's attempt to be listed as a secured creditor on the ground that the debtor sold the collateral to a third person prior to the filing of the bankruptcy. The court held that "since the debtor is no longer in possession of the collateral, the creditor simply has an unsecured claim for purposes of payment." *Id.* at 462. Additionally, in a Missouri case, *In re Elliott,* 64 B.R. 429 (Bankr.W.D.Mo.1986), a creditor tried to establish a secured claim against the estate's interest in missing diamond rings. The court stated that "[b]y definition, 'secured claim' requires availability of collateral to secure the creditor's right to payment." *Id.* at 430. The problem with the creditor's position was that it could not look to the collateral for repayment. The court concluded that although the creditor might have a secured claim in the property, it did not have a secured claim in the Chapter 13 estate.

The *Elliott* court noted that the disposition of the collateral was involuntary. *In re Byrd,* 92 B.R. 238 (Bankr.N.D.Ohio 1988), extended the *Elliott* holding to cases in which the debtor voluntarily relinquished control of the collateral. In *Byrd,* the creditor had a secured interest in two rings and a watch. Prior to filing the debtor voluntarily gave away one of the rings and a watch. The court found that the reasoning in *Elliott* did not hinge "on the Debtor's voluntariness in surrendering the collateral...." *Id.* at 239. Thus, a voluntary or involuntary transfer of the collateral has the same result. Once the collateral is transferred prior to filing, the estate has no interest in the collateral and the creditor cannot claim a security interest in the estate through the transferred collateral. The court held that the creditor had a secured claim only to the extent of the value of the ring still in possession of the debtor and was unsecured as to the balance of the claim.

In the case at bar, the Debtor's spending the pasture rents amounted to a transfer of

the alleged collateral. As he spent the money, the Bank's secured interest decreased until the all money was spent Once the collateral was completely spent, the Bank could no longer assert a secured claim to the pasture rents.

■ In Elliott, the court went on to explain that even if the creditor did have a secured claim, the value of the secured portion of the claim would be zero. Section 506(a) states that a claim is secured "to the extent of creditor's interest in the estate's interest in the property." Thus the creditor is unsecured for any interest beyond the value of the collateral. The court found that because the debtor was not in possession of the collateral at the time of filing, the estate's interest in the collateral was "of no value." *Elliott* at 431. The secured portion of the claim would be valued at zero and the remainder of the claim is an unsecured claim. *Id.*

Following the second point in *Elliott,* the practical result is the same in the instant case. The Bank would have a secured claim to the property to the extent of the estate's interest in the property as of the date of filing. The Debtor spent the funds prior to filing. Therefore, the estate had no interest in the funds as of the date of filing. The secured portion of the Bank's claim would be zero and the remainder of its claim would be unsecured.

## CONCLUSION

For the above reasons, the court finds that the Bank is an unsecured creditor.

ORDER ACCORDINGLY.[4]

---

4. This memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.