RYMER, Circuit Judge:
 

 Thomas C. Thompson Sports (“Thompson Sports”) appeals from a district court order that affirmed summary judgment in favor of Farmers and Merchants Bank of Long Beach (“Bank”). Both the district court and the bankruptcy court held that the Bank has a prior perfected security interest in certain interpleaded funds. The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157(b), and the district court had jurisdiction over the first appeal pursuant to 28 U.S.C. § 158(a). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d). We reverse and remand to the bankruptcy court for the entry of judgment in favor of Thompson Sports.
 

 I
 

 The resolution of this priority dispute turns on .the characterization of certain proceeds. Both the Bank and Thompson Sports lay claim to funds interpleaded by Championship Auto Racing Teams (“CART”) after the termination of its association with the debtor, Norman Turley. Thompson Sports holds a perfected security interest in the debtor’s general intangibles and argues that it has priority to the interpleaded funds because they represent proceeds from a general intangible-a franchise agreement between the debtor and CART. The Bank, on the other hand, asserts that it is entitled to the funds because the proceeds stem not from a franchise agreement, but from the redemption of the debtor’s CART share certificate, which the debtor pledged to the bank.
 

 CART organizes “Indy Car” auto racing events. The debtor raced Indy cars as a member of CART. To race in CART events, one must be a “franchise member.” These memberships are subject to strict requirements. Applicants for the one-season franchise memberships must commit to participate in all “Indy Car World Series” events and make a detailed disclosure of the racing team’s ownership, the history of the applicant’s principals, and the racing team’s financial and operational structure. CART’s Board of Directors reviews applicants for suitability to participate competitively in the Indy Car World Series. Franchise memberships are not transferable, each race team is restricted to two memberships, and the membership may only be renewed if the member exhibits “bona fide participation in all racing events” and is “otherwise eligible.”
 

 In addition to the restrictive franchise membership provisions, CART’s by-laws also contain stringent limitations on stock ownership. Once accepted ás a franchise member, applicants' must purchase one share of CART stock. If a franchise membership terminates, the member must return the stock certificate in exchange for the share value as determined by the Board, as well as a Board determined franchise value. Shareholders cannot “sell, transfer, encumber or otherwise dispose of any share” without first delivering a “written offer to sell to the corporation.” According to the by-laws, that offer must include “the resignation of such shareholder’s Franchise Membership in the corpora
 
 *673
 
 tion.” And the prospective purchaser “must be another shareholder of the corporation.” Confronted with the proposed sale, CART may either redeem the share or allow the transaction to proceed.
 

 Soon after Turley arranged for financing arrangements from both the Bank and Thompson Sports, Turley filed for Chapter 11 bankruptcy protection. After the petition, CART’s Board voted to redeem Tur-ley’s share of stock for $220,000. Additionally, Turley was entitled to a $29,394 end-of-the-year payment from CART based on his participation in CART-sanctioned races in 1993. Given the competing claims to the funds, CART filed a complaint in interpleader. On cross-motions for summary judgment, the bankruptcy court entered summary judgment in favor of the Bank.
 

 The district court affirmed.
 
 See Thomas C. Thompson Sports, Inc. v. Farmers and Merchants Bank,
 
 213 B.R. 857 (C.D.Cal.1997). The court held that Tur-ley’s share certificate in CART is a “certificated security” under Article 8 of the Uniform Commercial Code (“UCC”).
 
 See id.
 
 at 861. By gaining possession of the share certificate, the bank perfected its security interest in the share and its proceeds.
 
 See id.
 
 at 861-62. According to the district court, the interpleaded funds were proceeds attributable to Turley’s share in CART, and the Bank is therefore entitled to the funds.
 
 See id.
 
 at 860-62.
 

 II
 

 This court reviews the district court’s decision on appeal from a bankruptcy court de novo.
 
 See Sticka v. Wilbur (In re Wilbur),
 
 126 F.3d 1218, 1219 (9th Cir.1997). Whether the Bank is entitled to summary judgment is subject to de novo review.
 
 See Margolis v. Ryan,
 
 140 F.3d 850, 852 (9th Cir.1998). We must determine whether the bankruptcy court “correctly applied the law and if, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact.”
 
 Id.
 

 Ill
 

 The pivotal issue in this appeal is whether Turley’s share certificate is a “certificated security” under Article 8 of the UCC. If it is, the Bank, which has possession of the certificate, holds a perfected security interest in all funds attributable to the share.
 
 See
 
 Cal. Com.Code § 8321(1) (1993).
 
 [1]
 
 If it is not, the Bank cannot assert a perfected security interest pursuant to Article 8; this dispute would be governed by Article 9.
 

 A
 

 Under Michigan law, a “certificated security” is “a share, participation, or other interest in property of or an enterprise of the issuer or an obligation of the issuer” that is:
 

 (i) represented by an instrument issued in bearer or registered form;
 

 (ii) of a type commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and
 

 (iii) either one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations.
 

 Mich. Comp. Laws Ann. § 440.8102(a) (1993). As the UCC comments explain, the language of subsection (ii) “is intended
 
 *674
 
 to cover such interests as the stock of closely-held corporations which, although not in fact dealt in on exchanges or markets, is ‘of a type’ that is.”
 
 Id.
 
 § 440.8102 note (1998) (Official Reasons for 1977 Change).
 

 Whether Turley’s CART share is a certificated security therefore turns on whether it is “of a type” that is generally traded in markets and exchanges. The Bank argues that a CART share is nothing more than a share in a close corporation and that the CART transfer restrictions', being typical for such corporations, do not remove the share from - Article 8 purview!
 
 But see Motobecane Am., Ltd. v. Patrick Petroleum Co.,
 
 600 F.Supp. 1419 (E.D.Mich.1985) (holding under Michigan law that a certificate representing an interest in a limited partnership was not an Article 8 security because of transfer restrictions),
 
 aff'd on other grounds,
 
 791 F.2d 1248 (6th Cir.1986). Thus, according to the Bank, there is nothing special about a CART share and Article 8 applies.
 

 We disagree. As a franchise member, Turley was required to purchase one share of CART stock. Upon termination of his franchise membership, CART’s by-laws compelled him to return the share certificate. In order to renew his one-season franchise membership, and thus retain his CART share, the by-laws required Turley to participate in the season’s racing events and remain “otherwise eligible.” With these requirements, the CART share is definitively
 
 not
 
 “of a type commonly dealt in on securities exchanges or markets or commonly recognized ... as a medium for investment.”
 
 Cf. Morton v. Santa Anna Nat’l Bank (In re Bonnema),
 
 219 B.R. 951, 955 (Bankr.N.D.Tex.1998) (noting that, the “of a type” test is meant to ensure “that the Article 8 rules do not apply to interests or obligations in circumstances so unconnected with the securities markets that parties are unlikely to have -thought of the possibility that Article 8 might apply”).
 

 Our conclusion is bolstered by
 
 Giuffre Organization, Ltd. v. Euromotorsport Racing, Inc.,
 
 141 F.3d 1216 (7th Cir.1998), where the Seventh Circuit, examining facts nearly identical to those here, held that a CART share is not a certificated security under the pre-1994 amendments version of the UCC. As the court explained, a CART share is no ordinary stock certificate:
 

 CART is not your everyday close corporation — nor are its shares simple investment vehicles. Once shares of ordinary corporate stock have been paid for, the investors have no rights other than to vote for directors (and to receive dividends if any should be declared) CART certificates are different. They' entail not only a right but also an obligation to participate in races.
 

 Id.
 
 at 1218. Security instruments that are “commonly dealt in” do not carry with them such affirmative obligations.
 

 B
 

 Given that Turley’s share in CART is not a certificated security, we turn to the question of what
 
 was
 
 Turley’s interest in CART, and does the certificate matter.
 

 Since it is not an Article 8 certificated security, Turley’s interest is “caught by the ‘general intangible’ net in Article 9.”- 4- James J. White & Robert S. Summers, UNIFORM COMMERCIAL CODE § 31-12, at 161 (4th ed.1995);
 
 see also Bonnema,
 
 219 B.R. at 955 (holding that the certificated capital retains “must fall into the catch-all category of ‘general intangibles’-”); Cal. Com.Code § 9106 (1993). As a security interest in a general intangible may only be perfected by filing, Cal. Com.Code § 9302 (1993), possession of the share certificate is without consequence.
 
 [2]
 
 The Bank can have nothing
 
 *675
 
 more than an unperfected security interest in Turley’s CART share.
 
 See Giuffre,
 
 141 F.3d at 1219 (stating that only an Article 9 financing statement could perfect a security interest in a CART share).
 

 The interpleaded funds were proceeds attributable to Turley’s interest in CART. That interest is a general intangible and Thompson Sports’ perfected security interest in Turley’s general intangibles trumps any interest the Bank may have in the proceeds. Judgment must be entered for Thompson Sports.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . The conflicts provision of Article 8 provides that the law of the state in which the issuer was organized governs the validity of a security.
 
 See
 
 Cal. Com.Code § 8106 (1993); Mich. Comp. Laws Ann. § 440.8106 (1993). Because CART is a Michigan corporation, Michigan law governs the question of whether the share is a certificated security. However, because both loan transactions occurred in California, California law applies to the perfection of any lien against the share.
 
 See
 
 Cal. Com. Code §§ 9103, 9105 (1993). Additionally, since the transactions in this case occurred in 1993, we must apply the pre-1994 amendments version of the UCC.
 

 [2]
 

 . Possession perfects an Article 9 security interest in chattel paper, documents, and instruments.
 
 See
 
 Cal. Com.Code § 9305 (1993). Although represented by a certificate, the share is none of these. It is not chattel paper because it does not evidence a security interest or a lease.
 
 See id.
 
 § 9105(l)(b). It is not a document because it does not cover goods.
 
 *675
 

 See id.
 
 §§ 1201(15), 9105(1)©. And it is not an instrument because it is not a "writing which evidences a right to the payment of money ... which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment.”
 
 Id.
 
 § 9105(l)(i). The share certificates represent not just a right to payment but obligations to CART.